COBB, J.
The defendant below, A.D.J., was adjudicated a delinquent as a result of his convictions for possession of a controlled substance (cocaine) and tampering with evidence. He appeals that adjudication.
The facts, as set forth in the state’s brief are not in dispute:
On December 16, 2000, Detectives William Brown, Robert Dockery, and Kelsey Harris, received a radio dispatch to proceed to Bethune Village Market (“Market”) concerning individuals harassing customers and selling narcotics. Both Detectives Brown and Dockery were in plain clothes and driving unmarked cars, and Detective Harris was in full police uniform and driving a marked police vehicle.
Once the detectives had arrived at the Market, the Appellant was the first person they observed standing on the easternmost side of the Market. When the detectives had exited their vehicles they observed the Appellant take his right hand and place a tan cake-like substance, later identified as cocaine, into his mouth and begin chewing; then the Appellant turned and fled on foot inside the Market. Detectives Brown and *129 Dockery followed the Appellant inside the Market and observed him run into an area designated for employees only, and they also observed him chewing and trying to find a way out of the Market before making contact with him. When the Appellant had turned and come back toward the detectives, he was detained and observed with the tan cake-like substance on his chin and around his lips. Detective Dockery testified that once contact was made with the Appellant, he walked to the front of the Market where he contacted the manager and verified that the Appellant was the guy the manager was talking about. Upon detention and observation, Detective Brown went to his vehicle and retrieved a swab for Detective Dockery, and Dockery swabbed the substance observed on the Appellant’s chin and tested it with a Morris Kopeck field test which returned a positive presumptive test for cocaine. The field test was not saved because of the acid used with the test, and no evidence was sent to the FDLE because there was not enough substance to send due to the Appellant eating tan cake-like substance (cocaine). Thereafter, the Appellant was arrested. [Cites omitted].
The first argument raised by A.D.J. is that the trial court erred by denying his motion to suppress evidence. We agree with the state that the tip in the instant case came from an identifiable citizen-informant, the market manager. See State v. Maynard) 783 So.2d 226, 230 (Fla.2001). In Maynard the court cited one commentator as explaining:
[T]he courts have quite properly drawn a distinction between [informers likely to have been involved in the criminal activity] and the average citizen who by happenstance finds himself in the position of a victim of or a witness to criminal conduct and thereafter relates to the police what he knows as a matter of civic duty. One who qualifies as the latter type of individual, sometimes referred to as a “citizen-informer,” is more deserving of a presumption of reliability than the informant from the criminal milieu. (Quoting Wayne R. LaFave, Search and Seizure § 3.3 (3d ed.1996)).
The trial testimony established that it was the manager who had called the police and that A.D.J. was the person he had called them about. The manager qualified as an identifiable citizen-informant, and the information given to the police dispatch was entitled to a presumption of reliability.
The detectives observed A.D.J. standing in front of the market when they arrived, saw him place the substance (later identified as cocaine) into his mouth and begin chewing it, then turn and flee into the store where he ran to an area designated for employees only, at which point he was apprehended by the detectives. At the time of detention, the officers observed the tan cake-like substance on A.D.J.’s chin and around his lips.
We believe the foregoing facts establish that the officers had “reasonable suspicion” to stop and detain A.D.J. for investigation. This court stated in State v. Hunter, 615 So.2d 727, 730 (Fla. 5th DCA 1993), rev. denied, 626 So.2d 205 (Fla.1993):
In justifying a stop, “the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.” “[T]he facts [must] be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search ‘warrant a man of reasonable caution in the belief that the action taken was appropriate?” To determine whether information is suffi *130 cient to support a reasonable suspicion, the court must assess the totality of the circumstances known to the law enforcement officer and determine whether an experienced law enforcement officer could draw inferences and make deductions that would raise a suspicion that the individual being stopped was engaged in wrongdoing. [Citations omitted].
See also Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Tamer v. State, 484 So.2d 583 (Fla.1986).
A court’s evaluation of reasonable suspicion is guided by common sense and ordinary human experience. State v. Burns, 698 So.2d 1282, 1284 (Fla. 5th DCA 1997). Moreover, part of the totality of the circumstances is the fact of flight. See Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); Slydell v. State, 792 So.2d 667 (Fla. 4th DCA 2001). In this case the officers had reasonable suspicion to detain A.D.J. based upon: (1) the radio dispatch to proceed to the market based upon the manager’s call about individuals harassing customers and selling narcotics; (2) AD.J.’s actions of eating suspected crack cocaine; and (3) flight.
A.D.J. also contends that the evidence was insufficient to convict him of tampering with physical evidence. He argues that the officers did not identify themselves as police officers and that he was unaware of their status. The evidence at the hearing, however, was that one of the investigating officers was in full police uniform and driving a marked police vehicle. The three officers arrived at the market together at the same time. As they were exiting their vehicles, A.D.J. fled. The inference is clear and reasonable that A.D.J. was aware of the officers’ presence and identity. See State v. Jennings, 666 So.2d 131, 132 (Fla.1995).
AFFIRMED.
SHARP, W. and PALMER, JJ., concur.