IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
May 8, 2008 Session Heard at Jacksboro[1]

**STATE OF TENNESSEE v. TYSON LEE DAY**
**Appeal by Permission from the Criminal Court for Sumner County**
**No. 286-2005    Jane Wheatcraft, Judge**

_____

**No. M2006-00989-SC-R11-CD - Filed September 22, 2008**

_____

After unsuccessfully moving to suppress evidence resulting from the traffic stop that led to his arrest, the defendant, Tyson Lee Day, pleaded guilty to third offense driving under the influence and driving on a revoked license. The plea agreement provided for reservation of a certified question of law regarding whether the traffic stop was based on reasonable suspicion, supported by specific and articulable facts, that a criminal offense had been or was about to be committed. On appeal, the Court of Criminal Appeals concluded that at the time the officer initiated the traffic stop, he lacked reasonable suspicion. Accordingly, the court reversed the judgment of the trial court and, because the question was dispositive, dismissed the case. We granted the State's application for permission to appeal to consider the question of whether the community caretaking rationale for traffic stops justified the stop in this case. After carefully examining the certified question, however, we conclude that the community caretaking issue was not included within the scope of the question reserved for review. Accordingly, our review extends solely to the issue preserved, i.e., whether the traffic stop was based on reasonable suspicion, supported by specific and articulable facts, that a criminal offense had been or was about to be committed. We conclude that the facts do not support a finding of reasonable suspicion. Accordingly, we affirm the judgment of the Court of Criminal Appeals.

**Tenn. R. App. P. 11;**
**Judgment of the Court of Criminal Appeals Affirmed**

CORNELIA A. CLARK, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER and GARY R. WADE, JJ., joined. WILLIAM C. KOCH, JR., J., filed a dissenting opinion.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Elizabeth B. Marney (on brief), Assistant Attorney General; Mark A. Fulks (on brief and at oral

[1]Oral argument was heard May 8, 2008, in Jacksboro, Campbell County, Tennessee, as a part of the **S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents (S.C.A.L.E.S.) project.

argument), Senior Counsel; Lawrence Ray Whitley, District Attorney General; Thomas Dean, Assistant District Attorney General, for the appellant, State of Tennessee.

David Allen Doyle, District Public Defender; Mike Anderson, Assistant District Public Defender, for the appellee, Tyson Lee Day.

**OPINION**

Factual and Procedural Background

On May 16, 2004, Hendersonville Police Officer Jeff Tarkington was headed northbound on routine patrol along New Shackle Island Road when he noticed a southbound vehicle flashing its lights. The vehicle's driver, later determined to be Ms. Ferrell, waved her arms at Officer Tarkington and pointed at the white sport utility vehicle (SUV) in front of her. Officer Tarkington made a U-turn and pulled between the two vehicles. He activated his blue lights and initiated a traffic stop of the SUV. Ms. Ferrell also pulled over to the side of the road behind Officer Tarkington's patrol car. Officer Tarkington admitted that at the time he stopped the SUV he had not seen the defendant engaged in "any bad driving or anything of that nature." After first speaking with Ms. Ferrell, Officer Tarkington approached the SUV, which was driven by the defendant.[2] As he spoke to the defendant, Officer Tarkington detected the smell of alcohol. After the defendant failed several field sobriety tests, Officer Tarkington arrested him. A blood sample taken from the defendant indicated a blood-alcohol content of .25 percent.

Prior to trial, the defendant filed a motion to suppress any evidence obtained as a result of the traffic stop. He alleged that the stop was in violation of the Fourth Amendment of the United States Constitution and article I, section 7 of the Tennessee Constitution, because it was not based on reasonable suspicion, supported by specific and articulable facts, that a criminal offense had been, or was about to be, committed. He argued that, under the facts of this case, hand signals by another driver, unaccompanied by an explanation, do not rise to the level of reasonable suspicion sufficient to justify an investigatory stop.

In response, the State argued that "reasonable suspicion" is an imprecise term that should be interpreted in a common-sense, non-technical manner, considering the totality of the circumstances. The State contended that a police officer should not have to articulate a precise crime that is suspected, only that there are facts and circumstances indicative that a crime of some sort either has been committed or is in progress. The requirement of reasonable suspicion is intended to curtail arbitrary police action. Accordingly, where a citizen informant in an automobile flashes her headlights at the officer and makes hand signals that can be reasonably interpreted as indicating a

---

[2]Although Officer Tarkington testified at the suppression hearing that he "talked to the complainant first to find out what was going on" and "[s]he had told me what had happened," he never testified as to the substance of his conversation with Ms. Ferrell. We still do not know the nature of her complaint.

problem, that is sufficient to support a finding of reasonable suspicion.[3] Alternatively, the State argued as a matter of policy that under these facts police officers should be permitted to make brief traffic stops to investigate the circumstances as part of their community caretaking function. The flashing lights and hand signals could be indicative of distress, an emergency, or a crime. Given the mobile nature of automobiles, there is a certain inherent exigency when one motorist gives to a police officer signals calling attention to another motorist. Accordingly, the State argued that the stop in this case was justified as part of the police officer's community caretaking role. Indeed, the State argued, Officer Tarkington would have been derelict in his duty if he had failed to stop the defendant.

Although acknowledging that it was a close issue, the trial court agreed with the State. The court implicitly relied upon the community caretaking function of law enforcement in denying the motion to suppress:

> If an officer sees somebody flicking their lights, trying to get his attention, and then pointing, it seems to me that it is certainly reasonable within the circumstances to pull the car over and at least do an investigatory stop. I mean, there could have been a medical issue. It could have been–the car might have been fleeing from some kind of an accident. You're right, we don't know, but I think it warrants an investigatory stop.
>
> Would I have preferred that he witness some erratic driving himself? Yes. But on the other hand, I think that the officer, you know, he's got to consider public safety. He was alerted to the fact that obviously something was the matter. And so I feel that it was reasonable under the totality of the circumstances to stop the car.

Based on the trial court's ruling, the defendant and the State negotiated a plea agreement under which the defendant pleaded guilty to third-offense DUI and driving on a revoked license in return for sentences of eleven (11) months, twenty-nine (29) days, and six (6) months, respectively, to be served concurrently and suspended after service of one hundred twenty (120) days in jail. Part of the plea agreement was that the defendant would be permitted to certify and appeal the question of law challenging the validity of the traffic stop pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(A). The question certified for review reads as follows:

> that the stop of the Defendant's vehicle and seizure of the Defendant's person (by which law enforcement obtained evidence that the Defendant motioned to be suppressed) was not based upon

---

[3]In its written response to the defendant's motion to suppress, the State characterized Ms. Ferrell's actions as "clear signals to stop another driver."

> reasonable suspicion, supported by specific and articulable facts, that a criminal offense had been or was about to be committed . . . .

The question, as stated, did not specifically include an inquiry as to whether the stop was justified under the community caretaking function.

On appeal, the Court of Criminal Appeals reversed the judgment of the trial court and dismissed the indictments. The court concluded that the act of an unknown driver signaling a law enforcement officer and pointing to another vehicle, without more, was insufficient to support a finding of reasonable suspicion that a crime had been or was being committed. The court did not expressly discuss whether a community caretaking exception would apply to justify the traffic stop in this case.[4]

The State applied to this Court for permission to appeal, specifically raising the issue of whether a community caretaking exception to the reasonable suspicion requirement exists in Tennessee. The State pointed out that the Court of Criminal Appeals opinion in Jenkins, 2003 WL 21523247, seemingly reaches a contrary result to that reached by the intermediate appellate court in this case.[5]

The State also argued that the Court of Criminal Appeals had applied the wrong standard in analyzing the nature of Ms. Ferrell's complaint as lacking any indicia of credibility or basis of knowledge or even as making a specific complaint. The State contends that this informant was a citizen informant whose communication was, in the first instance, presumed reliable. Furthermore,

---

[4] State v. Day, No. M2006-00989-CCA-R3-CD, 2007 WL 677867 (Tenn. Crim. App. Mar. 7, 2007). The court briefly discussed a factually similar case upholding a traffic stop that resulted from a vehicle flashing its headlights. In that case, State v. Jenkins, No. M2002-01702-CCA-R3-CD, 2003 WL 21523247 (Tenn. Crim. App. June 30, 2003), a law enforcement officer performing routine patrol noticed an oncoming pickup truck continually flashing its headlights at oncoming traffic. Cognizant that the rigging of headlights to flash in such a manner was a violation of the motor vehicle laws, and uncertain as to whether the driver was signaling medical distress or a need for assistance, the officer made a U-turn and pulled in behind the driver and activated his blue lights, intending to check the driver's welfare. As it turned out, the driver, Jenkins, was flashing his lights at oncoming cars to warn them of the law enforcement presence. Once at the truck window, the officer observed drug paraphernalia and asked consent to search the truck. Jenkins consented and the search yielded a significant quantity of drugs and drug paraphernalia. The Jenkins court performed an analysis under both the Fourth Amendment to the United States Constitution, and article I, section 7 of the Tennessee Constitution. It concluded that under the totality of the circumstances, and considering that the sheriff's lieutenant was performing a legitimate community caretaking function in checking on Jenkins' welfare, the stop was constitutionally justified, even in the absence of reasonable suspicion of criminal activity. The court justified the stop on the basis that (1) flashing the lights in such a manner was expressly prohibited by Tennessee Code Annotated section 55-9-402(a)(1) and (2) the officer was legitimately concerned over the safety of the driver flashing his lights. Jenkins, 2003 WL 21523247, at * 5. The Court of Criminal Appeals in this case distinguished Jenkins on the basis that it involved a stop based on *both* a violation of traffic law *and* concern for the safety and welfare of the driver. Furthermore, the stop was directed solely against the driver making the signals, not any other driver.

[5] As noted in note 4, Jenkins was distinguished by the Court of Criminal Appeals on the basis that it involved a stop based on a violation of traffic law, concern for the safety and welfare of the driver, and that the stop in that case was directed solely against the driver making the signals, not any other driver.

-4-

although the informant's communication to the officer was articulated by hand signals rather than verbally, the State contends that such communication was sufficient to convey her concern that law enforcement intervention was needed. We granted the State's Application for Permission to Appeal.

## Scope of the Certified Question

The State argues in this Court that under the community caretaking function of law enforcement, upon observing the flashing lights and hand signals from Ms. Ferrell, Officer Tarkington was not only justified, but obligated, to make the traffic stop to assess the situation. We note, however, that this issue was neither raised in, nor addressed by, the Court of Criminal Appeals. Accordingly, our preliminary concern is whether this issue relating to the community caretaking function is encompassed within the scope of the question certified for appeal. The agreed order referenced by the judgment document in this case states the certified issue as:

> that the stop of the Defendant's vehicle and seizure of the Defendant's person (by which law enforcement obtained evidence that the Defendant motioned to be suppressed) was not based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense had been or was about to be committed . . . .

It was on this narrow issue, and this issue alone, that the Court of Criminal Appeals issued its opinion.

The right to plead guilty–and still preserve a question of law for appeal–is a product of the Tennessee Rules of Criminal Procedure, adopted effective July 13, 1978. While the initial version of Rule 37 provided the right to appeal a certified question, it contained no guidance or procedures for raising such appeals.[6] In State v. Preston, 759 S.W.2d 647 (Tenn. 1988), this Court provided detailed guidance on the necessary prerequisites for seeking appellate review of a certified question of law under Rule 37. We stated that "the final order or judgment from which the time begins to run to pursue . . . [an] appeal must contain a statement of the dispositive certified question of law reserved . . . for appellate review" and that "the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved." Id. at 650. Moreover, we emphasized that

> the order must state that the certified question was expressly reserved as part of a plea agreement, that the State and the trial judge consented to the reservation and that the State and the trial judge are of the opinion that the question is dispositive of the case. Of course,

---

[6]The original form of Rule 37 provided only that "[a]n appeal lies from any . . . judgment of conviction . . . [u]pon a plea of guilty or nolo contendere if . . . defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the State and of the court the right to appeal a certified question of law that is dispositive of the case . . . ." Tenn. R. Crim. Proc. 37(b)(2)(i) (1978).

the burden is on defendant to see that these prerequisites are in the final order and that the record brought to the appellate courts contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified.

Id. The decision in Preston was intended to establish a simple, uniform method by which certified questions may be pursued on appeal.

The Preston prerequisites have been strictly construed; indeed, we have described the requirements in Preston as "explicit and unambiguous." State v. Irwin, 962 S.W.2d 477, 479 (Tenn. 1998); State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996). As noted, Preston itself states that the "question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved . . . [and] [*n*]*o issue beyond the scope of the certified question will be considered*." Preston, 759 S.W.2d at 650 (emphasis added).

The present form of Rule 37, which became effective on July 1, 2002, expressly adopted the Preston prerequisites in subsection (b)(2)(A)(i)-(iv). Under the current Rule, an appeal may be pursued after a plea of guilty or nolo contendere if the defendant entered into a plea agreement under Rule 11(a)(3) but explicitly reserved–with the consent of the state and of the court–the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:

> (i) the judgment of conviction or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law that the defendant reserved for appellate review;
>
> (ii) *the question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved*;
>
> (iii) the judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial court; and
>
> (iv) the judgment or document reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case[.]

Tenn. R. Crim. P. 37(b)(2)(A) (emphasis added).

In the trial court, the issue concerning the constitutional validity of the traffic stop was initially raised by the defendant in a motion to suppress. In response to that motion, the State suggested that, viewed under a standard of reasonableness, the officer's "investigative" and

"community caretaking" functions justified the stop. In ruling on the motion, the trial court acknowledged that it was a close question, but ultimately concluded that "public safety" concerns rendered the stop valid.

Despite the earlier references to "community caretaking" and "public safety" concerns during the course of the suppression hearing, when the parties entered the plea agreement and drafted the certified question under Rule 37, they failed to include the specific question of whether the traffic stop of the defendant was justified under the community caretaking function. The narrow issue certified was whether the stop of the defendant's vehicle and seizure of the defendant's person was based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense had been or was about to be committed.[7] Accordingly, we are limited to consideration of that narrow issue.

Once again we emphasize the importance of clearly identifying the scope and limits of an issue intended to be preserved by a certified question. As we have stated repeatedly, no issue beyond the scope of the certified question will be considered. Irwin, 962 S.W.2d at 478-79; Pendergrass, 937 S.W.2d at 836-37; Preston, 759 S.W.2d at 650; see also State v. Norword, 938 S.W.2d 23, 26 (Tenn. Crim. App. 1996).

> *Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise*, the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise.

Preston, 759 S.W.2d at 650 (emphasis added). Regretfully, while our consideration of the stop under the community caretaking exception might well yield a different outcome, we are limited to consideration of the question preserved, to wit: whether the stop in this case was supported by reasonable suspicion.[8]

---

[7]Both the defendant and the State focused solely on the issue of reasonable suspicion in the Court of Criminal Appeals, the State giving only a passing reference to the officer's "duty to protect public safety."

[8]All too frequently appeals of certified questions have been dismissed for failure to comply with the strict requirements of Tennessee Rule of Criminal Procedure 37(b)(2)(A). See, e.g., Pendergrass, 937 S.W.2d at 837-38; State
(continued...)

Standard of Review

A trial court's findings of fact in a suppression hearing will be upheld by this Court unless the evidence preponderates otherwise. State v. Williams, 185 S.W.3d 311, 314 (Tenn. 2006) (citing State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)). The prevailing party in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. Id. at 314-15; Odom, 928 S.W.2d at 23. The application of the law to the facts, however, is a question of law that this Court reviews de novo. Williams, 185 S.W.3d at 315; State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997). In this case, because there is no dispute as to the facts, but only as to the law as applied to those facts, our review is de novo.

Analysis

I. Protection Against Unreasonable Seizure

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals from unreasonable searches and seizures. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . . ." Article I, section 7 of our own constitution similarly provides that "the people shall be secure in their persons . . . from unreasonable searches and seizures . . . ." The basic constitutional rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered is subject to suppression. Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Bridges, 963 S.W.2d 487, 490 (Tenn. 1997). This basic rule is subject to "'a few specifically established and well- delineated exceptions[,]' 'jealously and carefully drawn.'"[9] Coolidge, 403 U.S.

_____

[8](...continued)
v. Wilkes, 684 S.W.2d 663, 666-67 (Tenn. Crim. App. 1984). See also State v. McDonald, No. E2006-02568-CCA-R3-CD, 2007 WL 4460141, at *3 (Tenn. Crim. App. Dec. 20, 2007); State v. Christie, No. M2006-00612-CCA-R3-CD, 2007 WL 152484, at *3-4 (Tenn. Crim. App. Jan. 18, 2007); State v. Osborne, No. E2004-02723-CCA-R3-CD, 2006 WL 1134416, at *3-4 (Tenn. Crim. App. May 1, 2006); State v. Ogle, No. E2000-00421-CCA-R3-CD, 2001 WL 38755, at *3 (Tenn. Crim. App. Jan. 17, 2001). When crafting a certified question, both the defendant and the State would be prudent to review the Rule, craft the certified question to insure that it meets each of the requirements delineated in subsection (b)(2)(A)(i)-(iv) of the Rule, and analyze whether the issue as stated in the judgment order is broad enough to meet the intent of both parties. Although the burden is on the defendant/appellant to see that these prerequisites are in the final order, Pendergrass, 937 S.W.2d at 837, the State/appellee would be prudent to review the certified question as well because, as it did in this case, a certified question too narrow in scope may work to the State's detriment.

[9] These exceptions include searches and seizures conducted incident to a lawful arrest, those yielding contraband in "plain view," those in the "hot pursuit" of a fleeing criminal, those limited to a "stop and frisk" based on reasonable suspicion of criminal activity, those based on probable cause in the presence of exigent circumstances, and those based on consent. State v. Cox, 171 S.W.3d 174, 179 (Tenn. 2005); State v. Bartram, 925 S.W.2d 227, 230, 230 n.2 (Tenn. (continued...)

-8-

at 455 (quoting Katz v. United States, 389 U.S. 347, 357 (1967), and Jones v. United States, 357 U.S. 493, 499 (1958)). Both provisions are designed "'to prevent arbitrary and oppressive interference . . . with the privacy and personal security of individuals.'" I.N.S. v. Delgado, 466 U.S. 210, 215 (1984) (quoting United States v. Martinez-Fuerte, 428 U.S. 543, 554 (1976)).

Neither provision, however, limits all contact between citizens and law enforcement. The courts have recognized three levels of police-citizen interactions: (1) the full-scale arrest, which must be supported by probable cause; (2) the brief investigatory detention, which must be supported by reasonable suspicion of wrong-doing; and (3) the brief police-citizen encounter, which requires no objective justification.[10] State v. Daniel, 12 S.W.3d 420, 424 (Tenn. 2000) (citing Brown v. Illinois, 422 U.S. 590 (1975), Terry v. Ohio, 392 U.S. 1 (1968), and Florida v. Bostick, 501 U.S. 429 (1991)). Of the three categories, only the first two rise to the level of a "seizure" for constitutional analysis purposes.

The Fourth Amendment and article I, section 7 protections against unreasonable seizures apply to all seizures, even those of brief duration. The touchstone is "reasonableness." Florida v. Jimeno, 500 U.S. 248, 250 (1991) (citing Katz, 389 U.S. at 360); see also Skinner v. Ry. Labor Executives' Assn., 489 U.S. 602, 619 (1989); State v. Scarborough, 201 S.W.3d 607, 616 (Tenn. 2006). A police-citizen encounter becomes a seizure, thereby triggering a constitutional analysis of the police action, "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry, 392 U.S. at 19 n.16. A seizure occurs only "'if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" Delgado, 466 U.S. at 215 (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)).

The law is settled that an automobile stop by the use of flashing blue lights constitutes a "seizure" within the meaning of both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution. Delaware v. Prouse, 440 U.S. 648, 653 (1979); Williams, 185 S.W.3d at 316; State v. Randolph, 74 S.W.3d 330, 337 (Tenn. 2002); State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993). The fact that the detention may be brief and limited in scope does not alter that fact. Prouse, 440 U.S. at 653; State v. Binion, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994). The State concedes that the defendant was "seized" at the moment Officer Tarkington turned on his blue lights. The basic question, as indicated, is whether the seizure was "reasonable." Binion, 900 S.W.2d at 705 (citing Sitz, 496 U.S. at 449-51).

_____

[9](...continued)
1996) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973), Coolidge v. New Hampshire, 403 U.S. at 454-55, and Katz, 389 U.S. at 357).

[10]This last category would include the community caretaking or public safety function. Williams, 185 S.W.3d at 315 (citing Cady v. Dombrowski, 413 U.S. 433, 441 (1973), and State v. Hawkins, 969 S.W.2d 936, 939 (Tenn. Crim. App. 1997)).

Whether the stop of a vehicle is considered "reasonable" depends on whether the officer had either probable cause or an "articulable and reasonable suspicion" that the vehicle or its occupants were subject to seizure for a violation of the law. See Prouse, 440 U.S. at 663; State v. Coleman, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989). "Probable cause"–the higher standard necessary to make a full-scale arrest–means more than bare suspicion: "Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)). "This determination depends upon 'whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" Goines v. State, 572 S.W.2d 644, 647 (Tenn. 1978) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). "In dealing with probable cause, . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar, 338 U.S. at 175. See also State v. Jefferson, 529 S.W.2d 674, 689 (Tenn. 1975) (citing Draper v. United States, 358 U.S. 307, 313 (1959)), overruled on other grounds by State v. Mitchell, 593 S.W.2d 280, 286 (Tenn.1980).

The level of reasonable suspicion required to support an investigatory stop is lower than that required for probable cause. Alabama v. White, 496 U.S. 325, 330 (1990); Pulley, 863 S.W.2d at 31. However, an officer making an investigatory stop must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" Terry 392 U.S. at 27. An officer's reasonable suspicion must be supported by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21; see also Pulley, 863 S.W.2d at 30; Coleman, 791 S.W.2d at 505; State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992) (applying the Terry doctrine in context of vehicular stop). This Court has defined reasonable suspicion as "a particularized and objective basis for suspecting the subject of a stop of criminal activity." State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000). Objective standards apply rather than the subjective beliefs of the officer making the stop. See Norword, 938 S.W.2d at 25. See also Terry, 392 U.S. at 21-22 (stating that in making a reasonableness assessment, "it is imperative that the facts be judged against an objective standard . . . .").

In Pulley, this Court noted that "the reasonableness of seizures less intrusive than a full-scale arrest is judged by weighing the gravity of the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy." 863 S.W.2d at 30. Determining whether reasonable suspicion exists in a particular traffic stop is a fact-intensive and objective analysis. See generally Williams, 185 S.W.3d at 318-19 (citing State v. Garcia, 123 S.W.3d 335, 344 (Tenn. 2003)). In determining whether reasonable suspicion exists, an important factor in the analysis is that reasonable suspicion

'is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity

or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.'

Pulley, 863 S.W.2d at 32 (quoting White, 496 U.S. at 330).

The United States Supreme Court has held that a court must consider the totality of the circumstances when determining whether a police officer's reasonable suspicion is supported by specific and articulable facts. White, 496 U.S. at 330 (citing United States v. Cortez, 449 U.S. 411, 417 (1981)); see also Bridges, 963 S.W.2d at 492. Those circumstances include the objective observations of the police officer, information obtained from other officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. Watkins, 827 S.W.2d at 294 (citing Cortez, 449 U.S. at 418). Reasonable suspicion "is dependent upon both the content of information possessed by police and its degree of reliability." White, 496 U.S. at 330. Under circumstances where the information forming the basis for a motor vehicle stop is derived from an anonymous informant, Tennessee law requires some showing of both the informant's veracity or credibility and his or her basis of knowledge. Pulley, 863 S.W.2d at 31; cf. State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989) (discussing the showing required when an anonymous informant's tip is relied upon to establish probable cause for issuance of a warrant). "'[E]ach prong represents an independently important consideration that must be separately considered and satisfied in some way.'" State v. Keith, 978 S.W.2d 861, 866 (Tenn. 1998) (quoting State v. Simpson, 968 S.W.2d 776, 781 (Tenn. 1998)); see also Pulley, 863 S.W.2d at 31.

## II. Constitutionality of the Defendant's Seizure under a Requirement of Reasonable Suspicion

We turn now to the specific circumstances surrounding Officer Tarkington's stop of the defendant in this case. The undisputed facts are these: Officer Tarkington seized the defendant after being flagged down by an unknown driver who flashed her lights and waved at him and pointed to the defendant's SUV in front of her. He personally observed no suspicious or illegal conduct by the defendant. The defense argues that because Ms. Ferrell's identity was initially unknown, and the nature of her complaint uncertain, Officer Tarkington did not have specific and articulable facts to believe that the defendant had committed or was committing a criminal offense at the time he executed the traffic stop. The defendant's position is that Officer Tarkington should have talked to Ms. Ferrell to determine the specific nature of her complaint before stopping the defendant, and then only if the content of her complaint objectively raised a reasonable suspicion that the defendant had engaged, or was then engaged, in criminal conduct.

The State argues that the fact that the defendant's vehicle was mobile and moving created a certain exigency. It contends that had a crime been committed or been in progress, and Officer Tarkington stopped Ms. Ferrell to get the specific nature of her complaint before attempting to stop the defendant's vehicle, the defendant would have been long gone from the scene. Officer

Tarkington's only other alternative would have been to follow the defendant in hopes that he would commit a criminal offense that would justify the stop.

As set forth in the defendant's brief, the gist of the question before us is "whether one motorist drawing an officer's attention and pointing at another motorist, standing alone, rises to the level of reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." We are constrained to answer this question in the negative.

As noted, the reasonableness of a seizure turns on the facts and circumstances of each case. Pulley, 863 S.W.2d at 34. In a case involving a citizen complaint, any review necessarily involves an analysis of the credibility and basis of knowledge of the person making the report, the proximity in time of the report and the conduct complained of, any corroboration by law enforcement, and the seriousness of the threat. Id. at 31-34 (citing Jacumin, 778 S.W.2d 430). Although the State claims that it is improper to apply the two-prong standard of Jacumin to a complaining "citizen informant," we still find such analysis useful. We acknowledge that information from a known citizen informant is presumed reliable and not subject to the same level of scrutiny applied to a compensated informant. State v. Cauley, 863 S.W.2d 411, 417 (Tenn. 1993); State v. Melson, 638 S.W.2d 342, 354 (Tenn. 1982). Furthermore, information from a citizen informant is presumed reliable where circumstances indicate the information was gained from first-hand experience, and the motivation for communicating with law enforcement authorities is based on the "the interest of society or personal safety." State v. Luke, 995 S.W.2d 630, 636 (Tenn. Crim. App. 1998).

In this case, however, the citizen informant was unknown to Officer Tarkington. At the point when she was flashing her lights and waving and pointing at the SUV in front of her, she was completely anonymous to him. "For reliability to be presumed, information about the citizen's status or his or her relationship to the events or persons involved must be present." Id. at 637; see also Cauley, 863 S.W.2d at 417 (recognizing that, in assessing the validity of a search warrant based on information from an unnamed citizen informant, "'the reliability of the source and the information must be judged from all the circumstances and from the entirety of the affidavit'") (quoting Melson, 638 S.W.2d at 356). Here, Officer Tarkington had no basis upon which to evaluate Ms. Ferrell's status or her relationship to the defendant. The only information he had was the single fact that she was driving behind the defendant's SUV.[11] Under these circumstances, it was reasonable for Officer Tarkington to infer that Ms. Ferrell had witnessed the defendant do something that aroused her concern. That is, the context in which Officer Tarkington witnessed Ms. Ferrell's gestures indicated that she had some basis of knowledge for her "tip." It was *not* reasonable, however, for Officer Tarkington to infer from Ms. Ferrell's tip that the defendant had engaged in criminal behavior. As acknowledged by the State in its brief to the Court of Criminal Appeals, "any number of things could have led the informant to be concerned about the [SUV] and/or the driver."

---

[11]In support of its analysis, the dissent repeatedly refers to information obtained from victims of, or eyewitnesses to, criminal activity. As of the moment that Officer Tarkington seized the defendant, however, he did not know or have reasonable grounds to believe that Ms. Ferrell held either of these positions.

-12-

Thus, it is in Officer Tarkington's assessment of the *content* of Ms. Ferrell's communications that we find a constitutional deficit. See Pulley, 863 S.W.2d at 32 (recognizing that, in assessing the reasonableness of a stop, "[t]he content of the tip is also a crucial factor and, in particular, the level of danger that the tip reveals"). Unlike the more common circumstance of a traffic stop in which an officer personally observes suspicious or criminal behavior, here, Officer Tarkington himself observed no criminal activity by the defendant before stopping him; he relied solely on Ms. Ferrell's actions to justify the stop. Her actions, however, were ambiguous–they did not communicate any specific information and could have been just as indicative of non-criminal behavior as criminal behavior. The parties may have been involved in a domestic or a business dispute; perhaps Ms. Ferrell was suffering road-rage over some perceived slight; or perhaps her signaling was not related to the defendant at all. It was a matter of pure speculation for Officer Tarkington to guess as to the nature of her complaint. Although he may have had a "hunch" or "guess" that the driver of the SUV had committed some sort of offense, this is insufficient under the Fourth Amendment or article I, section 7, to support his seizure of the defendant. See Terry, 392 U.S. at 27.

As acknowledged by Justice Koch in his dissenting opinion, "[t]he State has the burden of proof of establishing reasonable suspicion or probable cause by a preponderance of the evidence." State v. Hannah, __ S.W.3d __, __, 2008 WL 2486600, at *2 (Tenn. June 23, 2008) (citing State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997)). Under the facts of this case, we hold that the State has failed to meet its burden of showing by a preponderance of the evidence that Officer Tarkington possessed a "particularized and objective basis for suspecting" the defendant of engaging in criminal activity. The officer's seizure of the defendant therefore violated the defendant's constitutional rights.[12]

As to the State's position that Officer Tarkington had no other practical options, we disagree. First, if suspicious that the defendant was committing a vehicular offense, Officer Tarkington could have followed him to observe whether he showed signs of impairment or other criminal conduct. Or, Officer Tarkington could have called in another officer to assist; one officer could have interviewed Ms. Ferrell about the specifics of her complaint while the other followed the defendant.[13] Had her complaint established reasonable suspicion that a crime had been committed or was being committed, the officer following the defendant would be justified in conducting an investigatory stop. See Luke, 995 S.W.2d at 636-37 (upholding a traffic stop on the basis of information from an identified citizen informant in a telephone call to a police dispatcher that the defendant had "no business driving"). Alternatively, Officer Tarkington could have pulled Ms. Ferrell over long enough to learn the nature of her concern. Under the circumstances of this case–involving a driver on a city street rather than on an interstate–such a delay in any apprehension of the defendant would

---

[12]Although Ms. Ferrell's actions in flashing her lights and pointing would certainly be sufficient to support a stop of *Ms. Ferrell* to investigate the nature of her distress, they were not sufficiently specific and articulate to support the stop and seizure of the defendant under the unique facts of this case.

[13]In fact, Officer Tarkington testified at the suppression hearing that a backup officer arrived at the scene *after* the stop.

have been brief and could have provided the necessary specific and articulable facts to justify seizing the defendant.

### Conclusion

On the narrow certified question presented to us, we hold that a law enforcement officer signaled by an anonymous citizen-driver in a manner obviously intended to invite the officer's intervention as to a third party–but without any indication as to the nature of the citizen's concern or any other information–does not have reasonable suspicion adequate to stop and seize the third party. Whether the community caretaking exception would relieve the officer of the need to have reasonable suspicion before stopping the vehicle is a question that must await another case in which it is properly presented. The judgment of the Court of Criminal Appeals is affirmed. The costs of this appeal are assessed against the State, against whom execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE