# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 16, 2010 Session

## STATE OF TENNESSEE v. ANDREW HUNTER HEFFEL

**Appeal from the Circuit Court for Maury County**
**No. 17979      Allen W. Wallace, Senior Judge**

---

**No. M2009-01400-CCA-R9-CD - Filed April 6, 2010**

---

The Defendant, Andrew Hunter Heffel, was charged with one count of driving under the influence of an intoxicant.  Before trial, he moved to suppress certain incriminating statements he made.  The trial court granted his motion to suppress.  The State was granted an interlocutory appeal from the order of the trial court suppressing the Defendant's statements.  We reverse the order of the trial court and remand for further proceedings.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed; Remanded**

DAVID H. WELLES, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; and Mike Bottoms, District Attorney General, for the appellant, State of Tennessee.

John Russell Parkes, Columbia, Tennessee, for the appellee, Andrew Hunter Heffel.

## OPINION

### Factual Background

We glean from the record before us that the Defendant was driving a motor vehicle on a public roadway in Maury County.  A law enforcement officer activated the blue lights on his patrol vehicle and pulled the Defendant over for speeding.  After issuing the Defendant a citation for speeding, the officer, detecting the odor of alcohol, asked the

Defendant how much he had had to drink. In response to this question, the Defendant made incriminating statements. After certain field sobriety tests were administered, the Defendant was charged with driving while under the influence of an intoxicant. He subsequently moved to suppress the statements he made in response to the officer's question. A hearing was held on the motion to suppress.

We have no transcript of the hearing before us, but the record contains a statement of the evidence reading, in relevant part, as follows:

> This matter was scheduled for trial on June 3, 2009. Just before jury selection began, the [D]efendant filed a motion to suppress his oral statements in which he argued that his statements during the traffic stop were taken in violation of Miranda v. Arizona, [384 U.S 436 (1966)]. The State objected to the motion as untimely. The trial court overruled the State's objection and gave the State an hour and a half in which to prepare a response.
>
> At the hearing that followed, no testimony was presented. The videotape of the stop was played for the trial court. The video showed that the [D]efendant was asked to get out of his car and walk to the back so [Officer Brad Ribley of the Columbia Police Department] could explain the traffic citation to him. After asking the [D]efendant his telephone number, Social Security number, and place of employment, the officer explained that the [D]efendant was being cited for driving 56 miles per hour in a 35 miles per hour zone. The officer explained the process for paying the citation and then asked the [D]efendant to sign the bottom of the citation. Then the officer asked the [D]efendant, "How much have you had to drink, sir," explaining that he detected an odor of alcohol. The [D]efendant responded, "I've had . . . I took my own bottle of, uh, Jack Daniels . . . . There's about that much left in it. So, I've just had that and about four Cokes." At that point, the [D]efendant was asked to take some field sobriety tests, and he agreed to do so.
>
> . . . .
>
> At the conclusion of the hearing, the trial court announced its ruling . . . . The trial court found that the [D]efendant was seized when the officer activated his blue lights and that no Miranda warnings were given before the officer asked the [D]efendant questions . . . . The trial court concluded that, because no Miranda warnings were given, those statements had to be suppressed.

In a written order granting the Defendant's motion to suppress, the trial court found that the Defendant was subjected to custodial interrogation in the absence of Miranda warnings.

**Analysis**

The State contends that the trial court erred in granting the Defendant's motion to suppress his statements given in the absence of Miranda warnings because the Defendant was not subjected to custodial interrogation. See Miranda v. Arizona, 384 U.S. 436, 444 (1966). "[A] trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). We review a trial court's applications of law to the facts de novo, however. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). The party prevailing at the suppression hearing is further "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from such evidence." Odom, 928 S.W.2d at 23.

Police officers are only obligated to administer Miranda warnings prior to "custodial interrogation." See Miranda, 384 U.S. at 444. Whether a person is in custody requires an inquiry into "whether, under the totality of the circumstances, a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with a formal arrest." State v. Anderson, 937 S.W.2d 851, 855 (Tenn. 1996).

Tennessee courts have recognized three different types of interactions between law enforcement and the public, namely "(1) a full scale arrest which must be supported by probable cause; (2) a brief investigatory detention which must be supported by reasonable suspicion; and (3) brief police-citizen encounters which require no objective justification." State v. Daniel, 12 S.W.3d 420, 424 (Tenn. 2000) (citations omitted). The second is known as a "Terry stop." See Terry v. Ohio, 392 U.S. 1 (1968). As a threshold matter, it is clear that Officer Ribley's stop of the Defendant was at least a Terry stop rather than merely a casual encounter between police and a citizen, as Officer Ribley activated his blue lights. See State v. Day, 263 S.W.3d 891, 902 (Tenn. 2008).

The United States Supreme Court, despite its recognition that "a traffic stop significantly curtails the 'freedom of action' of the driver and the passengers, if any, of the detained vehicle" and "constitutes a 'seizure,'" Berkemer v. McCarty, 468 U.S. 420, 436-37 (1984) (citations omitted), has held that "persons temporarily detained pursuant to such [traffic] stops are not 'in custody' for the purposes of Miranda." Id. at 440. In doing so, the court noted that "two features of an ordinary traffic stop mitigate the danger that a person questioned will be induced 'to speak where he would not otherwise do so freely.'" Id. at 437.

(quoting Miranda, 384 U.S. at 467). "First, detention of a motorist pursuant to a traffic stop is presumptively temporary and brief." Id. "Second, circumstances associated with the typical traffic stop are not such that the motorist feels completely at the mercy of the police." Id. at 438. The court strongly contrasted this type of police-citizen interaction with the often lengthy, "police dominated" questioning occurring in the type of stationhouse interrogation at issue in Miranda. Id. at 437-39.

In its brief, the State cites a number of this Court's cases in which we have followed the holding in Berkemer, including State v. Snapp, 696 S.W.2d 370, where we held that a defendant questioned by police while standing next to the wreck of a car he had been driving was not subjected to custodial interrogation. The State also cites State v. Roger Odell Godfrey, No. 03C01-9402-CR-00076, 1995 WL 120464 (Tenn. Crim. App., Knoxville, Mar. 20, 1995), in which we held based on Berkemer that "asking a modest number of questions and requesting the performance of sobriety tests at a location visible to passing motorists do not, by themselves, constitute treatment that can fairly be characterized as the functional equivalent of a formal arrest." Id. at *3.

The Defendant argues that he was subjected to the equivalent of a formal arrest in this case because Officer Ribley moved his patrol car from its original location, because he was asked to walk to the back of his car, and because questioning continued at that point. We also note that Officer Ribley's questioning occurred after about twenty-three minutes had elapsed on the video included in the record. In our view, these facts establish nothing more than the type of routine traffic stop discussed in Berkemer and Godfrey. Godfrey, in fact, noted that a defendant is not subject to the functional equivalent of formal arrest even when being directed to perform field sobriety tests; the Defendant had not been so directed at the time he made incriminating statements. Id.

The Defendant is correct that the question of whether a defendant is in custody is primarily a factual question. See State v. Childs, 584 S.W.2d 783, 786-87 (Tenn. 1979). In light of the well-established law discussed above, the evidence in this case preponderates against the trial court's finding that the Defendant was in custody for purposes of Miranda. Because the Defendant was therefore not subjected to custodial interrogation which necessitated a Miranda warning, the trial court's grant of his motion to suppress must be reversed.

**Conclusion**

Based on the foregoing authorities and reasoning, we reverse the trial court's grant of the Defendant's motion to suppress. This case is remanded to the trial court for further proceedings.

_____
DAVID H. WELLES, JUDGE