# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
May 9, 2012 Session

## STATE OF TENNESSEE v. RICHARD CARLTON PICKARD, JR.

**Appeal from the Circuit Court of Maury County**
**No. 20802      Robert L. Jones, Judge**

_____

**No. M2011-01935-CCA-R3-CD - Filed June 12, 2012**

_____

Richard Carlton Pickard, Jr. ("the Defendant") pled nolo contendere to one count of DUI, second offense, and one count of simple possession of Schedule IV contraband. He reserved five certified questions regarding the legality of his stop. Upon our thorough review of the record and applicable law, we hold that the Defendant is entitled to no relief. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Circuit Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Joel R. Bellis, Columbia, Tennessee, for the appellant, Richard Carlton Pickard, Jr.

Robert E. Cooper, Jr., Attorney General & Reporter; Jeffrey D. Zentner, Assistant Attorney General; Mike Bottoms, District Attorney General; and Caleb Bayless, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

On January 14, 2011, Officer Thomas Goetz of the Spring Hill Police Department stopped the Defendant for speeding after clocking the Defendant by radar driving sixty miles per hour in a forty-five mile per hour speed zone. The Defendant subsequently was indicted for one count of DUI, second offense; one count of violating the implied consent law; and one count of unlawful possession of propoxyphene, a Schedule IV controlled substance. The Defendant filed a motion to suppress all evidence obtained in the stop. The trial court denied the motion to suppress after a hearing. The Defendant subsequently entered a "best interest"

plea[1] to one count of DUI, second offense, and one count of simple possession of a Schedule IV narcotic. In conjunction with his plea, the Defendant reserved the following certified questions of law:

> (1) Did the State meet [i]ts burden by showing Officer Thomas Goetz was in compliance with T.C.A. 24-7-124 at the time of the alleged offense?
>
> (2) Did the State meet [i]ts burden of proving it had probable cause to show the Defendant was in violation of a traffic ordinance?
>
> (3) Did the State have the right to introduce as evidence the out-of-court statement of Officer Michael McCorkle – for purposes of establishing reasonable suspicion, supported by specific and articulable facts, that a criminal offense had been or was about to be committed?
>
> (4) Did the State meet [i]ts burden of proving it had a reasonable suspicion, supported by specific and articulable facts, that a criminal offense had been or was about to be committed; thus, allowing the [sic] Officer Goetz to make a lawful stop/seizure of the Defendant?
>
> (5) If the State failed to establish within the suppression hearing that [i]t had either probable cause that the Defendant had committed a traffic violation or had reasonable suspicion – supported by specific and articulable facts – that a criminal offense had been or was about to be committed by the Defendant, should the above-style case be dismissed for failure by the State to meet [i]ts initial burden within the suppression hearing that the State made a valid stop/seizure of the Defendant?

Initially, we hold that these questions were properly reserved and certified for our review. See Tenn. R. Crim. P. 37(b)(2)(A); State v. Pendergrass, 937 S.W.2d 834, 836-37 (Tenn. 1996).

---

[1] See North Carolina v. Alford, 400 U.S. 25, 37–38 (1970) (holding that, where the prosecution demonstrated a strong factual basis for the defendant's guilt, the trial court committed no constitutional error in accepting guilty plea from the defendant who, while protesting his innocence, deemed the plea to be in his best interest).

*Suppression Hearing*

At the suppression hearing, Officer Goetz testified that, as of August 5, 2011, he had been employed by the Spring Hill Police Department for three years. Prior to that time, he had been employed by the Cornersville Police Department.

On January 14, 2011, Officer Goetz received a radio transmission from another officer about a black pickup truck with "some type of box in the back" that had almost hit the vehicle of the officer making the transmission. Officer Goetz was close by, so he "proceeded . . . to try to intercept the vehicle." Officer Goetz stated that he "observed the vehicle pass" him. As the vehicle turned onto another road, Officer Goetz positioned his vehicle "to run stationary radar and got the vehicle on [his] radar at sixty miles an hour in a forty-five mile an hour speed zone."

Officer Goetz testified about the training he had received on using radar prior to stopping the Defendant:

> We have two officers with the Spring Hill Police Department that are certified radar instructors. Everybody at the department *prior to this stop* was required to go through radar certification, from the chief all the way down to patrol had to go through this. We had our training, we had to actually go out in a vehicle. We had to estimate speeds of what we thought they were, checking with the radar and it could not be more than five miles off by guessing the estimated speed of that vehicle. I was certified after that point by Corporal Johnny Smith, Jr., as one of our instructors to run radar.

(Emphasis added). Officer Goetz added that he had also been certified as to Doppler radar operation while working for the Cornersville Police Department in 2007, where he "went through training actually through the Mount Pleasant Police Department through an Officer Raymond Workman that was there at the time. There [were] videos and testing required to be certified at that point."

The State introduced into evidence two cards certifying Officer Goetz's completion of Doppler radar training, one card issued on January 9, 2007, while Officer Goetz was with the Cornersville Police Department, and one issued on January 21, 2011, by the Spring Hill Police Department. The latter card states, "Pursuant to Public Chapter 703 TCA 24-7-124[,] [t]his officer has completed the mandated eight hours of training in Doppler Radar on January 21 2011." Officer Goetz clarified that, although the latter card bore the date of January 21, 2011, the training was actually held in December 2010.

In response to questions by the trial court, Office Goetz described his training:

[W]hen I advised we ride together, you estimate the speed, while you see the vehicle coming at you you estimate the speed. Say the vehicle is coming and I say it is doing forty-five miles an hour, then I verify that by the radar. If the radar says he is doing forty-three, I write down the speed that I estimated and the actual speed. It can't be more than five off, five mile an hour off the speed.

. . .

[I]f we got the mileage within the right – estimated within the five mile, they will issue us a certificate.

Also admitted into evidence was a certificate of accuracy as to the radar device that Officer Goetz used to clock the Defendant's speed, dated December 10, 2010.[2]

On the basis of this proof, the trial court denied the Defendant's motion to suppress, ruling as follows:

[T]he State has carried the burden by a preponderance of the evidence which is all that is required in a suppression hearing to show that the officer had been trained on the use of this equipment before he stopped [the Defendant] on January 14.

Indirectly, the officer has also testified that he has been tested on estimating speed in comparison to what the radar gun actually indicates which I guess is a way of helping him monitor a gun that might malfunction or start giving defective readings. He has got his own training and judgment to sort of second guess the equipment and get it repaired or recalculated or calibrated if necessary.

What the Court finds here is that this officer had more than one reason to believe that the [Defendant's] vehicle was speeding –

. . .

---

[2] Defense counsel contended during oral argument that the training Officer Goetz received in December related only to the certificate of accuracy issued on the radar gun itself. The record does not support this contention.

I am concluding that this officer observed a speeding vehicle and was able to judge that with his own experience without the aid of equipment but that he was also trained adequately to use the equipment and to confirm what his eyes and his experience otherwise told him. The stop was legal, the evidence is admissible.

We turn now to the Defendant's certified questions, challenging the legality of Officer Goetz's stop of his vehicle.

**Analysis**

*Standard of Review*

When conducting a review of the trial court's determinations from a suppression hearing, questions regarding the witnesses' credibility, the weight and value of the proof, and resolution of conflicts in the evidence are matters entrusted to the trial court as the trier of fact. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, we will uphold the trial court's factual findings unless the preponderance of the evidence is otherwise. Id. However, where the trial court has applied the law to the facts, we will conduct a de novo review. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Because the State is the prevailing party, it "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23.

> *Certified Question One: Did the State meet [i]ts burden by showing Officer Thomas Goetz was in compliance with T.C.A. 24-7-124 at the time of the alleged offense?*

Tennessee Code Annotated section 24-7-124 provides as follows:

> In any judicial or administrative proceeding in which the results of a radar, laser or similar device used to measure the speed of a motor vehicle are being introduced for the purpose of proving the speed of the motor vehicle or the conduct of the driver of the vehicle, such results shall not be admissible for such purposes unless the law enforcement officer operating the device has been *trained* pursuant to guidelines established by the National Highway Traffic Safety Administration or the Tennessee peace officer standards and training (POST) commission.

Tenn. Code Ann. § 24-7-124(a) (Supp. 2011) (emphasis added). The Defendant argues that Officer Goetz's certification card indicates that he received the training on January 21, 2011,

after the date of the stop. Thus, he contends, the exclusionary rule established by section 24-7-124(a) rendered inadmissible Officer Goetz's testimony about the reading he saw on his radar gun after pointing it at the Defendant.

We disagree. Officer Goetz testified that he received the training in December 2010 and that the card was issued later. The trial court found that Officer Goetz had received the necessary training prior to stopping the Defendant. The evidence does not preponderate against the trial court's finding.

The Defendant also contends that the proof is not sufficient to establish that the training Officer Goetz received was in compliance with section 24-7-124(a). The Defendant points to the following colloquy between defense counsel and Officer Goetz on cross-examination:

Q. You are not trained under NHTSA to teach other individuals?

A. No, sir, I'm not an instructor.

Q. Are you able to state just one, just one rule by NHTSA, can you tell me one rule that NHTSA requires to follow?

A. I don't recall any.

Q. You don't recall?

A. No, sir.

Q. There is nothing you know in regards to what NHTSA requires, is that correct?

A. Not unless our instructors are required to know it. They teach us.

Q. So you are not qualified to say you were trained under the NHTSA guidelines, that would be fair to say?

A. Unless my instructor is certified through NHTSA.

Q. Right. In regards to yourself, you are not qualified, you haven't received that training?

A. Not through NHTSA, no, sir.

A close review of this line of questioning demonstrates that the Defendant established only that Officer Goetz was not qualified under NHTSA to teach other officers on the use of radar devices, that he did not remember any specific NHTSA guidelines that he may have been taught during his training, and that he did not know if his instructor was certified through NHTSA. Conversely, this evidence does not provide proof contradicting that Officer Goetz was trained pursuant to the Tennessee Peace Officer Standards and Training ("POST") Commission standards. Moreover, Officer Goetz's certification card provides that his certification was pursuant to Tennessee Code Annotated section 24-7-124. We hold that the proof does not preponderate against the trial court's finding that Officer Goetz had received the statutorily required training. Accordingly, we answer this certified question affirmatively, and the Defendant is not entitled to suppression on the basis of Tennessee Code Annotated section 24-7-124(a).

> *Certified Question Number Two: Did the State meet [i]ts burden of proving it had probable cause to show the Defendant was in violation of a traffic ordinance?*

"As a general rule under both the state and federal constitutions, if the police have probable cause to believe that a traffic violation has occurred, [traffic] stops are considered constitutionally reasonable." State v. Cox, 171 S.W.3d 174, 179 (Tenn. 2005) (citing Whren v. United States, 517 U.S. 806, 810 (1996); State v. Vineyard, 958 S.W.2d 730, 734 (Tenn. 1997)). In the context of traffic stops, our supreme court has stated,

> Probable cause . . . means more than bare suspicion: Probable cause exists where the facts and circumstances within their [the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. This determination depends upon whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [accused] had committed or was committing an offense. In dealing with probable cause, . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

State v. Day, 263 S.W.3d 891, 902 (Tenn. 2008) (internal quotation marks and citations omitted).

In this case, the proof does not preponderate against the trial court's finding that Officer Goetz "observed a speeding vehicle." Officer Goetz testified that, using his radar

device, he determined that the Defendant was driving sixty miles an hour in a forty-five mile per hour zone. Officer Goetz was trained properly in the use of the radar device. The radar device had been certified as accurate. Accordingly, Officer Goetz had probable cause to stop the Defendant for speeding, a traffic violation. See United States v. Navarro-Camacho, 186 F.3d 701, 705 (6th Cir. 1999) (officer had probable cause to stop defendant upon clocking defendant with radar as travelling above speed limit); United States v. Crotinger, 928 F.2d 203, 206 (6th Cir. 1991) ("Probable cause for stopping the car for a speeding violation existed because of the 66 mph reading on the radar detector."). Therefore, we also answer this certified question in the affirmative.

> *Certified Question Number Three: Did the State have the right to introduce as evidence the out-of-court statement of Officer Michael McCorkle – for purposes of establishing reasonable suspicion, supported by specific and articulable facts, that a criminal offense had been or was about to be committed?*

The Defendant has made no argument in his brief to this Court in support of this question, which raises a hearsay issue. See Tenn. R. Evid. 801, 802. Therefore, this certified question has been waived. See Tenn. Ct. Crim. App. R. 10(b).

> *Certified Question Number Four: Did the State meet [i]ts burden of proving it had a reasonable suspicion, supported by specific and articulable facts, that a criminal offense had been or was about to be committed; thus, allowing the [sic] Officer Goetz to make a lawful stop/seizure of the Defendant?*

Because the level of reasonable suspicion required to support a traffic stop is lower than that required for probable cause, see Day, 263 S.W.3d at 902 (citing Alabama v. White, 496 U.S. 325, 330 (1990); State v. Pulley, 863 S.W.2d 29, 31 (Tenn. 1993)), this question is pretermitted by our holding that Officer Goetz had probable cause to stop the Defendant.

> *Certified Question Number Five: If the State failed to establish within the suppression hearing that [i]t had either probable cause that the Defendant had committed a traffic violation or had reasonable suspicion – supported by specific and articulable facts – that a criminal offense had been or was about to be committed by the Defendant, should the above-style[d] case be dismissed for failure by the State to meet [i]ts initial burden within the suppression hearing that the State made a valid stop/seizure of the Defendant?*

For the reasons set forth above, we have held that Officer Goetz had probable cause to stop the Defendant. Accordingly, we answer this certified question in the negative.

## **Conclusion**

For the foregoing reasons, we have answered all of the Defendant's certified questions in a manner which entitles him to no relief. Accordingly, we affirm the Defendant's conviction.

_____
JEFFREY S. BIVINS, JUDGE