# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### April 9, 2014 Session

## STATE OF TENNESSEE v. VICTORIA WELLINGTON

**Direct Appeal from the Circuit Court for Hickman County**
**No. 11-5195CR     Timothy L. Easter, Judge**

---

**No. M2013-01271-CCA-R3-CD - Filed June 9, 2014**

---

In a bench trial, the Defendant, Victoria Wellington, was convicted of one count of DUI, first offense, and one count of felony evading arrest. The trial court sentenced the Defendant to eleven months, twenty-nine days for the DUI conviction and to two years for the felony evading arrest conviction. The trial court ordered that the sentences be served concurrently and be suspended after nine months, with the remainder to be served on probation. On appeal, the Defendant contends that the trial court erred when it denied her motion to suppress her statements to police. She further contends that the evidence is insufficient to sustain her conviction for felony evading arrest After a thorough review of the record and applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J., and JOE H. WALKER, III, SP.J., joined.

Michael J. Flanagan, Nashville, Tennessee, for the Appellant, Victoria Wellington.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Kim Helper, District Attorney General; Kate Yeager and Nicole Dusche, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant driving while under the influence and her subsequent refusal to stop her vehicle in Hickman County, Tennessee. For these offenses, a Hickman County grand jury indicted the Defendant for one count of driving under the

influence ("DUI"), fourth offense, with a blood alcohol content ("BAC") of .08 or above, and one count of felony evading arrest.

## A. Pretrial Proceedings

The Defendant sought to suppress an oral statement she made to the police officer who initiated the stop of her vehicle, contending that the stop was illegal and in violation of the Defendant's Fourth Amendment rights. The trial court held a hearing on the motion, during which Troy Bowman, an officer employed with the Hickman County Sheriff's Department, testified that he received a call from dispatch on June 22, 2011, stating that the Defendant's daughter, Rena Caldwell, had called police to report that the Defendant was driving while intoxicated. Ms. Caldwell told the dispatcher that she had been a passenger in the Defendant's car and had made the Defendant stop the car and let Ms. Caldwell get out on Puckett Hollow Road. Ms. Caldwell reported that the Defendant's vehicle was traveling "towards town." The dispatcher indicated to Officer Bowman that the Defendant was driving a black Chevrolet "Avalanche" pickup truck. Officer Bowman testified that he spotted the vehicle on Puckett Hollow Road. He stated that, when he observed the vehicle, he "stopped" and "heard the vehicle accelerate," so he turned his vehicle around and engaged his emergency lights. He stated that the "vehicle ran, evaded me." Officer Bowman stated that he had not observed the vehicle commit a traffic violation when he engaged his emergency lights but that he engaged his lights because "[t]hat truck fit the description of what we were looking for."

Officer Bowman testified that the vehicle turned onto Defeated Creek Road and traveled approximately 800 yards before it came to a stop. Officer Bowman stated that, while he was following the vehicle, he noted that it was "moving at a high rate of speed and did almost wreck . . . ." He observed the driver "throw something out the window[.]" Officer Bowman testified that, after he initiated the stop, he found a liquid that had the odor of alcohol dripping down the side of the vehicle. Officer Bowman estimated that he followed the vehicle for a mile or a mile-and-a-half before it pulled over on Defeated Creek Road. Officer Bowman stated that the vehicle was going "significantly faster" than the 35 mph speed limit.

Officer Bowman stated that, when the vehicle came to a stop on Defeated Creek Road, he told the Defendant to "shut the vehicle off and throw the keys out the window." He stated that the Defendant complied with his instructions "after about the fourth time" he gave them. Officer Bowman then approached the vehicle and said he could smell an "obvious" odor of alcohol. Officer Bowman asked the Defendant to exit the vehicle, which she did, "slid[ing] out" of the driver's seat. He testified that the Defendant "kept saying, I'm sorry" and that he asked her if she had been drinking, to which she responded that she had consumed a "couple

of glasses of wine." Officer Bowman stated that he did not administer any field sobriety tests at that point, because "[the Defendant] could not stand up straight" and was holding onto the side of her truck.

Officer Bowman testified that the Defendant's motor skills were too impaired for her to attempt to perform any field sobriety tests and that, in response to his questions, she responded, "I'm sorry" multiple times. He said that the Defendant said, "she was sorry that she had been drinking and ran." He agreed that he read the Implied Consent form to the Defendant, and she agreed to take a Breathalyzer Test.

Officer Bowman testified that dispatch told him "what direction and what road [the Defendant's vehicle was] on," and the directions were consistent with where he spotted the vehicle. He stated that he responded immediately to the dispatcher's call. He further stated that he "turned the blue lights on . . . after [the Defendant] accelerated."

On cross-examination, Officer Bowman testified that he testified in a preliminary hearing held in this matter. He agreed that, at the preliminary hearing, he did not testify about the Defendant's excessive speed. He agreed that it was "not against the law" to accelerate. Officer Bowman testified that, "[w]hen the vehicle accelerated, [he] assumed that was the vehicle [indicated by the dispatcher] because it was not just simply stepping down on the gas[,] it sounded like it had been floored. You know when you put your gas pedal all the way to the floor." He agreed that it was the acceleration of the vehicle that caused him to activate his emergency lights and that he "did not know who it was at the time." He reiterated that he had not seen the vehicle commit any traffic violations.

Officer Bowman reiterated that he pursued the Defendant's vehicle for a mile or a mile-and-a-half before she pulled over on the side of the road, and he testified that she "could have pulled over" sooner. Officer Bowman testified that, when he activated his blue lights, he did not know if it was the vehicle dispatch was referring to, but the vehicle "fit the description."

On redirect-examination, Officer Bowman testified that he was driving down Puckett Hollow Road and the Defendant's vehicle "caught [his] eye when [he] heard it accelerate." He reiterated that the vehicle that accelerated was a black Avalanche pickup truck. Officer Bowman agreed that he had written in his report that the Defendant's vehicle was traveling at a "high rate of speed." Officer Bowman testified that his recognition of the black truck and its acceleration was "almost simultaneous."

Based upon this evidence, the trial court denied the Defendant's motion to suppress her statements.

3

## B. Trial

At the Defendant's bench trial, the State called Officer Bowman, who testified that he was a patrol officer with the Hickman County Sheriff's Department and responded to a call from dispatch on June 22, 2011. The dispatcher told him to be on the lookout ("BOLO") for a "possible drunk driver on Puckett Hollow [Road] in a black pickup truck." Officer Bowman testified that he was driving on Puckett Hollow Road when he spotted a black Avalanche pickup truck driving towards him. When "the vehicle got beside [him] it accelerated sharply and took off." In response, Officer Bowman "immediately turned [his vehicle] around and checked into pursuit." In an attempt to pull the vehicle over, he activated his emergency lights and siren. The driver of the vehicle did not stop the truck but "kept driving" for approximately a mile before eventually stopping.

Officer Bowman testified that his pursuit of the vehicle ended after the vehicle turned left onto Defeated Creek Road and traveled another half-mile on that road. Once the car was stopped, Officer Bowman testified that he yelled at the driver to turn off the engine and throw the keys out of the window. He stated that the driver, when she was exiting the vehicle, "sort of fell out of the vehicle[.]" He identified the Defendant in the courtroom as the driver of the vehicle.

Officer Bowman testified that he asked the Defendant "why she ran from [him]," and she replied she was "sorry." Officer Bowman testified that the Defendant had been sitting on a pillow inside her vehicle, and the pillow was wet with a liquid that smelled like an alcoholic beverage. He also stated that on the side of the vehicle was a liquid that had a strong smell of alcohol. Officer Bowman stated that the Defendant "exhibited signs of impairment," including repeatedly saying she was sorry, not being able to follow his commands, and having trouble standing up without support. Officer Bowman asked the Defendant if she had been drinking, and she replied that she had consumed a couple of glasses of wine.

At that point, Officer Bowman asked the Defendant to perform the standard field sobriety test, which included the "walk and turn task." He stated the Defendant performed "very poorly" on the test. Officer Bowman asked the Defendant to perform the "one-legged stand" test, and she was not able to complete the test. Officer Bowman testified that, based on the Defendant's failure to perform the tests, he judged her as being impaired and placed her into custody. Sergeant Brad Garland arrived to transport the Defendant to the county jail, and upon arrival, he read the "implied consent" to the Defendant.

Sergeant Brad Garland testified that he was employed by the Hickman County Sheriff's Department and was on duty on June 22, 2011. He stated that the police dispatcher

put out a BOLO for a "black Avalanche in the Puckett Hollow area . . . possibly [involving] an intoxicated driver[.]" He stated that he heard Officer Bowman's transmission over the police radio that he was in pursuit of the vehicle, and Sergeant Garland arrived on the scene where the Defendant's vehicle was stopped while Officer Bowman was completing the field sobriety test. He agreed that he read the Defendant the "implied consent form" while she was in the back of Officer Bowman's patrol vehicle. He stated that the Defendant gave her consent to submit to a breathalyzer test, which he administered to her after the required observation period. He stated that the result of the Defendant's test was a BAC of .165.

Following the trial, the trial court convicted the Defendant of one count of DUI, first offense, and one count of felony evading arrest. The trial court sentenced the Defendant to eleven months, twenty-nine days for the DUI conviction, and to two years for the felony evading arrest conviction. The trial court ordered that the sentences run concurrently and be suspended after nine months, with the remainder to be served on probation.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it denied her motion to suppress her statements to Officer Bowman. She contends that the stop of her vehicle was illegal. She further contends that the evidence presented a trial was insufficient to support her conviction for felony evading arrest. The State responds that Officer Bowman had "reasonable suspicion to effectuate the stop based upon the information that [Ms.] Caldwell provided to 911," and, thus, his stop of the Defendant's vehicle was legal. The State further contends that the evidence presented at trial was sufficient for a trier-of-fact to conclude beyond a reasonable doubt that the Defendant "intentionally fled from or attempted to elude Officer Bowman's stop."

### A. Motion to Suppress

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id*. at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this Court reviews *de novo* the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. *See State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999). The trial court, as the trier of fact, is able to assess the credibility of the

witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. *Odom*, 928 S.W.2d at 23. In reviewing a trial court's ruling on a motion to suppress, an appellate court may consider the evidence presented both at the suppression hearing and at the subsequent trial. *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "'article 1, section 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment.'" *State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting *Sneed v. State*, 423 S.W.2d 857, 860 (1968)). The analysis of any warrantless search must begin with the proposition that such searches are per se unreasonable under the Fourth Amendment to the United States Constitution and article 1, section 7 of the Tennessee Constitution. This principle against warrantless searches is subject only to a few specifically established and well-delineated exceptions. *See Katz v. United States*, 389 U.S. 347, 357 (1967); *State v. Tyler*, 598 S.W.2d 798, 801 (Tenn. Crim. App. 1980). Evidence discovered as a result of a warrantless search or seizure is subject to suppression unless the State establishes that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000).

An exception to the warrant requirement exists when a police officer conducts an investigatory traffic stop based on a reasonable suspicion that a criminal offense has been or is about to be committed. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Binette*, 33 S.W.3d at 218. When a traffic stop is initiated based on probable cause or reasonable suspicion, a resulting investigation is reviewed under the framework established in *Terry*. *See United States v. Brignoni-Ponce*, 422 U.S. 873 (1975). Such investigations require that an officer's actions must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. In *State v. Davis*, our Supreme Court reiterated the standard for determining reasonable suspicion. Noting that reasonable suspicion is a lower standard than that for determining the existence of probable cause, the Court stated:

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

354 S.W.3d 718, 727 (Tenn. 2011) (citing *State v. Yeargan*, 958 S.W.2d 626, 632 (Tenn. 1997) (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990))); *see also United States v. Sokolow*, 490 U.S. 1, 7-8 (1989). The *Davis* court went on to say that:

6

[A] trial court's determination of whether a police officer's reasonable suspicion is supported by specific and articulable facts is an objective, fact-intensive inquiry. *State v. Williams*, 185 S.W.3d 311, 318 (Tenn. 2006). It requires the court to consider the totality of the circumstances established by the proof. *State v. Day*, 263 S.W.3d 891, 903 (Tenn. 2008). These circumstances include, but are "not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders." *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992).

354 S.W.3d at 727.

The evidence presented by the State at the suppression hearing was Officer Bowman's testimony that the 911 dispatcher gave him a description of a black pickup truck with a possible drunk driver. When Officer Bowman passed a vehicle on the road fitting the dispatcher's description, he "simultaneous[ly]" heard the vehicle accelerate. This caused him to activate his emergency lights, and he proceeded to follow the vehicle in an attempt to stop the driver. A similar stop was upheld in *Davis*, in consideration of the totality of the circumstances and based on the officer's testimony that the vehicle's description matched that of the dispatcher's BOLO and that the driver's behavior was "abrupt" and "evasive" in the presence of the officer's patrol vehicle. In the present case, Officer Bowman testified that he noticed that the Defendant's vehicle, as it passed his, fit the description from the dispatcher and that, in that same moment, the Defendant "floored" her vehicle in a manner that further drew his attention to her vehicle. It was not until then that Officer Bowman engaged his emergency lights and began his pursuit of the Defendant.

We conclude that the evidence does not preponderate against the trial court's finding that the Defendant's motion to suppress should be denied. Based on the dispatcher's description of the Defendant's vehicle and the Defendant's behavior when her vehicle passed Officer Bowman's, the totality of circumstances support that Officer Bowman had specific articulable facts sufficient to rise to the level of reasonable suspicion as a basis for an investigatory stop of the Defendant's vehicle. Thus, the trial court properly denied her motion to suppress the stop. The Defendant is not entitled to relief.

### B. Sufficiency of the Evidence

The Defendant next contends that the evidence is insufficient to sustain her conviction for felony evading arrest. She contends that "the mere fact that [she] drove approximately one mile before stopping[] is not sufficient evidence" that she intentionally evaded Officer Bowman's attempt to pull over her vehicle. The State responds that the evidence is sufficient

to support a rational trier-of-fact's conclusion that she intended to elude the traffic stop.

Tennessee Code Annotated section 39-16-603(b)(1) provides that "[i]t is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop." The offense "is a Class E felony unless the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties." *Id.* at (b)(3).

The Defendant contends that there was no proof presented that she intentionally fled or attempted to elude Officer Bowman after he turned on his emergency lights. Officer Bowman's testimony was that, after he activated his lights, the Defendant proceeded to drive another mile to a mile-and-a-half, made a left-hand turn, and then drove another half a mile before finally stopping her vehicle. Officer Bowman testified that during that time there were several places the Defendant could have pulled over safely. This evidence, viewed in the light most favorable to the State, that the Defendant drove more than a mile after Officer Bowman attempted to stop her vehicle, is sufficient from which a rational trier-of-fact could conclude that the Defendant intentionally fled or attempted to elude the officer after receiving a signal to stop. Accordingly, the evidence is sufficient to sustain the Defendant's conviction for felony evading arrest. The Defendant is not entitled to relief.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE