IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 29, 2009

## STATE OF TENNESSEE v. EVERETT DANIEL MEADOR, III

**Appeal from the Criminal Court for Washington County**
**No. 33802    Lynn W. Brown, Judge**

_____

**No. E2008-01710-CCA-R3-CD - Filed December 11, 2009**

_____

After a jury trial, the Defendant, Everett Daniel Meador, III, was convicted of driving under the influence (DUI), first offense, a Class A misdemeanor.  The Defendant appeals, contending that because the arresting officers lacked probable cause to arrest him, the trial court erred in denying his motion to suppress the evidence resulting from his arrest.  The Defendant also contends that the trial court improperly denied his motion for a mistrial, which was based upon the results of his breathalyzer test, that were submitted to the jury after the trial court ruled that the results were inadmissible.  After determining that a mistrial should have been declared, we reverse the judgment of the trial court, and we remand the case for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Reversed;**
**Case Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Dan R. Smith, Johnson City, Tennessee, for the appellant, Everett Daniel Meador, III.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Anthony Wade Clark, District Attorney General; and Robin C. Ray, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The record reflects that in January 2008, the Defendant filed a motion to suppress the results of the breath test which was administered following his arrest for driving under the influence.  The Defendant argued both that the police lacked probable cause to arrest him and that, pursuant to a

since-repealed provision of Tennessee Code Annotated section 55-10-406(a)(1),[1] the test results were inadmissible because the police administered the test more than two hours after the Defendant's initial detention.

At the hearing on the motion, Officer Nicholas Anderson with the Johnson City Police Department testified that at 6:14 the morning of January 20, 2007, he arrived on the scene of a single-car accident. Officer Anderson saw a white Ford truck in the front yard of a residence. Through the truck's open driver-side door, Officer Anderson saw the Defendant slumped over the truck's steering wheel. The officer said that the Defendant appeared to be "unconscious, or passed out," and that it took him a while to awaken the Defendant. The officer shook the Defendant and shouted at him without success, but the Defendant awoke after the officer rubbed his knuckles across the Defendant's chest. The Defendant told the officer that he was going to his home in Gray. Officer Anderson "got [the Defendant] out of [his] vehicle and placed him in [the] back seat" of the police cruiser while the officer filled out paperwork. The officer said he put the Defendant into the police car because it was cold outside and he wanted the Defendant to stay warm.

Officer Anderson said that he did not administer any field sobriety tests to the Defendant because his shift was ending. Therefore, after placing the Defendant in his car at approximately 6:20 a.m., he "called for a relief officer." Officer Anderson explained that "a typical wreck takes an hour to work" and that he would not receive overtime pay if he worked past the 7:00 a.m. end of his shift. He said that the Defendant called his girlfriend while they were waiting for the relief officer and that the relief officer arrived shortly after the shift ended. Officer Anderson acknowledged that allowing someone to use a phone while in police custody went against departmental policy.

On cross-examination, Officer Anderson acknowledged that at a preliminary hearing he had testified that when he approached the Defendant, he smelled the odor of alcoholic beverages. He denied testifying at the preliminary hearing that he had administered field sobriety tests to the Defendant, and he acknowledged that the Defendant was not free to leave once he was placed in the police cruiser.

Officer Michael Howard testified that he was the officer dispatched to the accident scene to relieve Officer Anderson. When Officer Howard arrived on the scene, he saw the Defendant's truck "wrecked against a tree in the front yard of a residential house," with the Defendant sitting in the back of Officer Anderson's police cruiser. Officer Howard said that when he opened the police car's rear passenger door, he smelled "what appeared to be an odor of alcoholic beverage." He took the Defendant to a nearby school to conduct field sobriety tests on the defendant. Officer Howard said that the Defendant "appeared to be having some problems [completing the tests]. I noticed a little swaying . . . when he was doing the one legged stand." After the Defendant consented to a breath test, the officer took the Defendant to the Johnson City Police Department's detention center.

---

[1]"For the results of such test or tests to be admissible as evidence [in DUI cases], it must first be established that all tests administered were administered to the person within two (2) hours following such person's arrest or initial detention." Tenn. Code Ann. § 55-10-406(a)(1) (Supp. 2006) (repealed 2009).

Officer Howard summoned Sergeant Donna Tallmadge, an officer certified to use the department's breath testing machine, to administer the test. Officer Howard testified that with this machine, there is a twenty-minute period between the time the officer "logs in" to the machine and the time the officer administers the test. In this case, Sergeant Tallmadge logged in at 8:13 a.m. and the defendant submitted his breath sample at 8:38 a.m. The test showed the Defendant's blood alcohol content to be .17% at the time he submitted his sample.

On cross-examination, Officer Howard testified that in addition to the one-legged stand test, he administered the horizontal gaze nystagmus test and instructed the Defendant to walk a straight line. He said that his police cruiser's in-car video camera recorded the tests but that "the camera was not focused in properly. It just had the front of the car, and only some of the test showed up, and the audio was not operating that day." When asked whether the recording "reflects that [the Defendant] did, in fact, do as you requested" performing the one-legged stand test, Officer Howard replied, "based on what I saw I thought I detected a little swaying on it, but, again, the feet weren't shown, so, it doesn't really show a whole lot of jerkiness in the motion of the body."

During cross-examination, the Defendant's attorney asked to admit the recording of the field sobriety tests into evidence. The trial court granted counsel's request; however, the record reflects that equipment to view the recording was unavailable in the courtroom during the hearing. Defense counsel requested a continuance to acquire the equipment to play the recording in the courtroom. The trial court denied the continuance, stating, "I think it would be your responsibility to have the officer to bring his equipment. . . . It's 3:30 [p.m.]. We quit at 5 o'clock. . . . We started the hearing, request for continuance denied."

At the conclusion of the hearing, the trial court suppressed the results of the Defendant's breath test because the test was administered more than two hours after the police initially detained the Defendant.[2] However, the trial court found that the officers did have probable cause to arrest the Defendant, so the court ruled that all other evidence related to the Defendant's arrest was admissible. The case then proceeded to trial.

Trial Testimony

Martha Trevathan testified that at approximately 4:15 the morning of January 20, 2007, she heard the noise of an engine running outside her home. She looked out the window and saw "a truck sitting up against the curb at the empty lot next to [her] house." Fifteen to twenty minutes later, she went outside and saw the truck parked against the curb between her driveway and the driveway of the house next door. When she left her house around 6:15 in the morning, the truck was still parked against the curb, its engine running. Ms. Trevathan called 911 to report the truck; she said that she

---

[2]The defendant was indicted on two counts of driving under the influence; the second count referenced the results of the defendant's breath test. See Tenn. Code Ann. § 55-10-401(a)(2) (2008) (criminalizing driving while "[t]he alcohol concentration in the person's blood or breath is eight-hundredths of one percent (.08%) or more."). While no order dismissing Count 2 of the indictment appears in the record, the record reflects that in light of the trial court's order suppressing the results of the breath test, Count 2 was not presented to the jury.

could not see anyone inside the truck, although she acknowledged that she "really didn't look that closely because [she] was afraid of whoever was in there."

William Givens, who lived three houses down from Trevathan, testified that on the morning in question, he initially saw a truck near Trevathan's house. He said that the truck's engine was running and its lights were on. Some time later, his wife alerted him that the truck was in their yard. Mr. Givens called 911; after hanging up, he went outside and saw a white truck in his yard, with the front wheel of the truck positioned against a tree. He said that he did not see anyone inside the truck.

Officer Anderson testified that when he arrived on the scene at approximately 6:20 that morning, he saw the Defendant's truck "crashed" against a "medium size[d] tree" in the front yard of a residence; he also saw the defendant slumped over the steering wheel in the truck's driver's seat. He added that the truck's engine was running when he arrived on the scene. Officer Anderson turned the engine off and attempted to rouse the Defendant. After shaking the Defendant's arm failed to produce a response, the officer rubbed his knuckles on the Defendant's chest; this action woke the Defendant. Officer Anderson testified that when the Defendant awoke, "[h]e was incoherent . . . kind of dazed. He had slurred speech, and I started to smell the - - alcohol as he spoke more and more. . . . [W]hen I came to the door you could smell alcohol, but, as he began to talk . . . the odor got stronger and stronger."

Officer Anderson testified that because he was aware that the accident investigation would last "well beyond" the 7:00 a.m. ending of his shift, he called for a relief officer. While he waited for the officer to arrive, Officer Anderson questioned the Defendant about his activities. The Defendant told the officer that he had been to a birthday party and that he was headed home to Gray. The Defendant said that he had been drinking at the party, although he did not tell the officer what he consumed or how much he consumed. The officer said that because the temperature was "very cold" that morning, he put the Defendant in the back of his police cruiser before beginning the paperwork associated with the accident. Officer Anderson said that based on his training and experience as a police officer, he formed the opinion that the Defendant "was too intoxicated to be operating a vehicle." On cross-examination, Officer Anderson admitted that he did not arrest the Defendant and did not administer field sobriety tests to the Defendant. He said that while he did not see the Defendant drive the car into the tree, he said that given the frost-covered ground, he could "actually see the [truck's tire] tracks where it went over the curb and . . . follow [them] all the way to . . . the tree."

Officer Howard testified that when he arrived at the accident scene to relieve Officer Anderson, the Defendant was still in Officer Anderson's police cruiser. After Officer Anderson told Officer Howard about what had happened, Officer Howard removed the Defendant from Officer Anderson's car and took him to his own police cruiser. Officer Howard said that when he opened the door to Officer Anderson's car, he smelled "a strong odor of what appeared to be alcoholic beverages" and found that the Defendant's speech "seemed to be a little slurred at the time." He added that the Defendant also appeared "slightly unsteady on his feet." Officer Howard said that based on these observations, coupled with his conversations with Officer Anderson and other witnesses, he concluded before administering the field sobriety tests that the Defendant "was

probably under the influence."

Officer Howard said that because the street on which the accident occurred did not provide a smooth or level surface on which to conduct certain field sobriety tests, he took the Defendant to a nearby elementary school to administer the tests. Officer Howard testified that during the "walk and turn" test, "it looked like from my observation that [the Defendant] had swayed a little bit as he walked along the . . . straight line. . . . His arms raised at one point." On cross-examination, Officer Howard said that the video recording of the field sobriety tests did not show the Defendant's hand or feet movements and also did not appear to depict the Defendant's swaying and raising his arm, which the officer insisted that he saw while the Defendant performed the tests. The officer acknowledged that the Defendant was cooperative during the tests and that although the Defendant's speech was slurred, the officer was able to understand the Defendant when he spoke. Officer Howard said that at one point the Defendant's girlfriend arrived at the accident site and that she drove the Defendant's truck from the scene because the damage to the truck was "minor."

Sarah Perry, the Defendant's fiancée, testified that she and the Defendant went to a birthday party the night before the Defendant's arrest. She said that the Defendant "had a few drinks with dinner[,] maybe," although she could not recall how many drinks he had that evening. She said that she left the party between 1:00 and 1:30 the next morning and that a friend took her home. She called the Defendant around 1:50 a.m. and told him that she was going to bed; he replied that he would be home soon. When Perry awoke around 6:45 a.m., the Defendant was not home. She called the Defendant, who explained to her what had happened. She then went to the accident scene. Perry claimed that when she spoke to the Defendant at the scene, she could not smell any alcoholic beverages on him.

The jury found the Defendant guilty of driving under the influence, first offense, as charged in the indictment. See Tenn. Code Ann. § 55-10-401(a)(1) (2008). The trial court sentenced the Defendant to eleven months, twenty-nine days, with the sentence suspended after the service of ten days in the county jail. The Defendant subsequently filed a timely notice of appeal.

ANALYSIS

I: Motion to Suppress

The Defendant first argues that the trial court erred in concluding that the police had probable cause to arrest him for driving under the influence. He also asserts that he was prejudiced by the trial court's refusal to grant a continuance during the suppression hearing so that he could acquire equipment to play in court the video recording of the Defendant's field sobriety tests. We disagree.

"[A] trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Id. Both proof presented at the suppression hearing and proof presented at trial may be considered by an appellate court in deciding the propriety of the trial court's ruling on a motion to suppress. State v. Henning, 975 S.W.2d 290,

299 (Tenn. 1998); State v. Perry, 13 S.W.3d 724, 737 (Tenn. Crim. App. 1999). However, the prevailing party "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23. An appellate court's review of the trial court's application of law to the facts is conducted under a de novo standard of review. State v.Walton, 41 S.W.3d 75, 81 (Tenn. 2001) (citations omitted).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals from unreasonable searches and seizures. "The basic constitutional rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered is subject to suppression." State v. Day, 263 S.W.3d 891, 901 (Tenn. 2008) (citing Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Bridges, 963 S.W.2d 487, 490 (Tenn. 1997)). Two types of police-citizen encounters are considered seizures for constitutional analysis purposes: "(1) the full-scale arrest, which must be supported by probable cause; [and] (2) the brief investigatory detention, which must be supported by reasonable suspicion of wrong-doing[.]" Day, 263 S.W.3d at 901 (citations omitted). In this case, the Defendant does not argue that the police lacked reasonable suspicion to detain him before administering the field sobriety tests or that the time, manner, or scope of his investigatory detention rendered his detention constitutionally improper. The Defendant also does not argue that his arrest was illegal. See Tenn. Code Ann. § 40-7-103(a)(6) (2006) (permitting, as relevant to this case, arrest of driver "[a]t the scene of a traffic accident . . . when, based on personal investigation, the officer has probable cause to believe that the [driver] has committed an offense under the provisions" of the DUI statute; defendant in this case was not arrested at the accident scene). Instead, the Defendant argues only that the police lacked probable cause to arrest him.

In Day, the Tennessee Supreme Court explained the concept of probable cause as follows:

"Probable cause"— the higher standard necessary to make a full-scale arrest—means more than bare suspicion: "Probable cause exists where 'the facts and circumstances within [the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)). "This determination depends upon 'whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" Goines v. State, 572 S.W.2d 644, 647 (Tenn. 1978) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).

Day, 263 S.W.3d at 902.

In the present case, the police had probable cause to arrest the Defendant before Officer Howard took the Defendant to the school for the field sobriety tests. Officer Anderson testified that when he came to the accident scene, he saw the Defendant's truck crashed against a tree in the front

yard of a house; the truck's door was open and the engine running. The officer saw the Defendant in the driver's seat of his truck, slumped over the steering wheel. The Defendant did not respond to Officer Anderson's initial attempts to awaken him; once the Defendant awoke, the officer noted that he had slurred speech and the odor of alcohol on his breath. Officer Howard testified that before he conducted the field sobriety tests, the Defendant "appear[ed] to have slurred speech, was "slightly unsteady on his feet," and had "the strong odor of alcoholic beverages" on his person. Such evidence does not preponderate against the trial court's determination that the police had probable cause to arrest the Defendant for driving under the influence.

The Defendant also argues that the trial court erred by denying his suppression hearing motion for a recess to procure a DVD player so that the court could view the recording of the Defendant's field sobriety tests. The Defendant asserts that the DVD "demonstrated a successful completion of the tests and that any reasonable suspicion dissipated." The State does not respond to this argument.

Although the Defendant should have been more diligent in ensuring that the proper equipment for viewing the DVD was present in the courtroom at the suppression hearing, the trial court should have granted a recess to allow the Defendant to acquire a DVD player—at the very least, the trial court should have viewed the recording of the field sobriety tests before making its decision. However, after viewing the recording, we conclude that the trial court's failure to view the DVD at the suppression hearing did not prejudice the Defendant. As Officer Howard testified at the suppression hearing, there is no sound present on the recording, and the recording does not depict the Defendant's hands and feet. Although the Defendant's "swaying," which Officer Howard supposedly observed during the field sobriety tests, is not readily apparent from the recording, this fact alone does not preponderate against the other evidence supporting the trial court's probable cause determination. We conclude that the trial court did not err in denying in part the Defendant's motion to suppress.

## II: Mistrial

During Officer Howard's trial testimony, the State moved to admit into evidence an "Alcohol Influence Report" that the officer prepared concerning the Defendant's arrest. The Defendant did not object to this exhibit's admission, and the trial court granted the State's motion. During the jury's deliberations, it submitted two questions to the trial court. The first question read, in its entirety, "legal limit?" and the second read, "brought into evidence do we consider it even if not verbalized in court?" Responding to the first question, the trial court wrote, "The legal limit has no relevance in this case." The trial court initially stated that it did not understand the second question, but the bailiff informed the trial court that the Alcohol Influence Report contained the results of the Defendant's breath test, which the trial court had excluded.[3] The trial court initially stated that "if it's part of an exhibit then, of course, [the jury] can consider it. . . . [I]t's too late. . . . [I]t's your obligation to object to evidence if it's not being introduced properly." Defense counsel stated the trial court's assessment was "fundamentally unfair to the defendant" and that counsel did not object

---

[3]This exhibit is a two-page document; the results of the breath test are listed at the bottom of the second page.

to the exhibit because he relied upon the State's attorney, who, "as an officer of the court . . . should have clearly excluded anything relative to this court's order" before proffering the exhibit. The State's attorney insisted that she did not intentionally include the breath tests results in the proffered exhibit.

The Defendant then moved for a mistrial, which the trial court denied. The trial court issued the following curative instruction: "You are not to consider any part of an exhibit regarding an intoximeter or results thereof." On appeal, the Defendant argues that the trial court's refusal to grant a mistrial constituted reversible error, while the State counters that the trial court's issuing a curative instruction remedied any potential prejudice.

Before addressing the trial court's denial of the Defendant's motion for a mistrial, we must consider the issue of waiver. The record reflects that the document containing the blood-alcohol level was admitted into evidence without objection. Failure to raise a contemporaneous objection typically results in a waiver of the issue on appeal. Tenn. R. App. P. 36(a); See also State v. Smith, 24 S.W.3d 274, 280 (Tenn. 2000). Thus, the Defendant is limited to plain error review of this issue. Tennessee Rules of Appellate Procedure 36(b) provides for plain error review as follows:

> When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal.

Our supreme court has adopted the factors developed by this court to be considered when deciding "'whether an error constitutes "plain error"' in the absence of an objection at trial: '(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is necessary to do substantial justice.'" Smith, 24 S.W.3d at 282 (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). In order for this court to reverse the judgment of a trial court, the error must be "of such a great magnitude that it probably changed the outcome of the [proceedings]," and "recognition should be limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." Adkisson, 899 S.W.2d at 642.

The record clearly established what occurred in the trial court. A clear and unequivocal rule of law was breached when the document was entered into evidence after the trial court ruled that the document was inadmissible. The exchange between the trial court and counsel for the Defendant shows that the failure to object was not a tactical decision. The trial court had already determined that the breathalyzer test results were inadmissible and had so ruled. The admission of the results contrary to the earlier ruling violated the Defendant's right to an impartial determination of his guilt or innocence and consideration of the error is necessary to do substantial justice. The admission of the suppressed evidence, a document stating that the Defendant's blood-alcohol level was twice the legal limit, was plain error which resulted in a manifest necessity to declare a mistrial. Accordingly, we conclude that admission of the test results "prevent[ed] an impartial verdict from being reached." Arnold v. State, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977). Therefore, when the error came to

the trial court's attention, the Defendant's motion for a mistrial should have been granted, and the failure to grant the motion was an abuse of the trial court's discretion. See State v. Reid, 91 S.W.3d 247, 279 (Tenn. 2002); State v. Adkins, 786 S.W.2d 642, 644 (Tenn. 1990).

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is reversed. The case is remanded for a new trial.

_____
D. KELLY THOMAS, JR., JUDGE.