# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### July 16, 2014 Session

## STATE OF TENNESSEE v. LINZEY DANIELLE SMITH

**Appeal from the Circuit Court for Williamson County**
**No. IICR077410     James G. Martin, III, Judge**

―――――――――――――

**No. M2013-02818-CCA-R3-CD - Filed February 2, 2015**

―――――――――――――

Defendant, Linzey Danielle Smith, entered a plea of guilty to the offense of driving while her blood or breath alcohol concentration was 0.08% or more (DUI) in violation of T.C.A. § 55-10-401(2), but explicitly reserved the right to appeal a certified question of law pursuant to Tenn. R. Crim. P. 37(b)(2)(A). The certified question of law limits this court to the following narrow issue: whether probable cause that Defendant had committed the Class C misdemeanor offense described in T.C.A. § 55-8-123(1) (a driver must maintain a vehicle entirely within a single lane "as nearly as practicable") authorized a stop of Defendant's vehicle by a state trooper or, alternatively, whether the trooper had reasonable suspicion, based on specific and articulable facts, that Defendant had committed or was about to commit the Class C misdemeanor offense set forth in T.C.A. § 55-8-123(1). Based upon the General Assembly's classification as a criminal offense the failure of a driver to maintain her vehicle totally within a single lane of traffic "as nearly as practicable" and guidance from our supreme court's decision in *State v. Brotherton*, 323 S.W.3d 866 (Tenn. 2010), we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which ALAN E. GLENN, J., joined. NORMA MCGEE OGLE, J., filed a dissenting opinion.

Patrick Newsom, Nashville, Tennessee, for the appellant, Linzey Danielle Smith.

Herbert H. Slatery, III, Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Kim R. Helper, District Attorney General; and Carlin Hess, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background**

Our review of the appellate record shows that Defendant properly reserved a certified question of law for appeal following her negotiated plea agreement to plead guilty to driving with a breath or blood alcohol concentration of 0.08% or more, commonly referred to as DUI *per se*. *See* Tenn. R. Crim. P. 37(b)(2)(A); *State v. Day*, 263 S.W.3d 891, 898-99 (Tenn. 2010) (citing *State v. Preston*, 759 S.W.2d 647 (Tenn. 1988) and *State v. Pendergrass*, 937 S.W.2d 834 (Tenn. 1996)).

The certified question of law states:

> Whether the stop of Defendant's vehicle by Trooper Charles C. Achinger of [the] Tennessee Highway Patrol on December 6, 2012, violated Defendant's rights granted pursuant to the Fourth Amendment to the U.S. Constitution and Article I, Section 7 of the Tennessee Constitution and whether any evidence, statements and blood tests obtained as a result of said stop should be suppressed as the fruits of an unconstitutional seizure, due to the fact that there was no probable cause that a traffic violation [had] been committed under [T.C.A.] § 55-8-123(1), and there was no reasonable suspicion based on the totality of the circumstances, where Defendant was observed driving on a winding road and sloping portion of a roadway for a distance of approximately 2.5 miles.

T.C.A. § 55-8-123(1) provides as follows:

> **55-8-123.  Driving on roadways laned for traffic.**
>
> Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic, the following rules, in addition to all others consistent with this section, shall apply:
>
> > (1)     A vehicle *shall* be driven as nearly as practicable *entirely within a single lane* and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety;

(italicized emphasis added)

The General Assembly has criminalized a violation of T.C.A. § 55-8-123(1) as a Class C misdemeanor. T.C.A. § 55-8-103. In this case, the Class C misdemeanor is punishable by imprisonment of not greater than thirty (30) days or a fine not to exceed fifty dollars ($50.00), or both. T.C.A. § 40-35-111(e)(3). We note at the outset that this case does *not* address the issue of whether Defendant's driving which was observed by the trooper provided probable cause or reasonable suspicion that Defendant was driving under the influence of intoxicants in violation of T.C.A. § 55-10-401, even though that is the offense to which Defendant pled guilty as a result of the stop.

After she was indicted on two alternative theory counts of DUI, Defendant filed a "Motion to Suppress and/or Dismiss Due to Illegal Stop." Defendant alleged that the facts showed she had been observed crossing the fog line once for a short distance while driving northbound on Interstate 65 in Williamson County. Defendant asserted that the trooper did not have reasonable suspicion or probable cause that Defendant was committing a criminal offense to justify a warrantless seizure by the trooper. The State filed a trial court brief in opposition to Defendant's suppression motion. In it, the State distinguished the appellate decisions relied upon by Defendant, cited several cases it asserted supported the constitutionality of the stop, and in fact argued that the facts supported a finding that the trooper had reasonable suspicion based upon specific and articulable facts that Defendant was committing the criminal offense of DUI. As noted below, this last assertion has been abandoned by the State. The State also accurately set forth in its trial court brief the precise legal quandary that must be resolved in this case:

> [T]he issue of driving behavior consistent with the crossing over the fog and/or center lines and its basis for conducting an investigatory stop, in and of itself, is one of much contention. On one hand, Tennessee Code Annotated § 55-8-123 requires motorists to drive within their lanes of travel "as nearly as practicable" at all times. On the other hand, a driver who drifts over line markings in the roadway may indicate the possibility of an impaired mental status. Thus, an investigatory stop in line-crossing cases can either be based upon probable cause of a traffic violation, namely Tenn. Code Ann. § 55-8-123, or reasonable suspicion of the criminal activity of driving under the influence. The problem that the State and Defendants face comes from the outpouring of appellate decisions that seem to contradict one another in their application of Fourth Amendment jurisprudence.

Trooper Charles Achinger was the only witness who testified at the suppression hearing. An audio-visual DVD of Defendant's vehicle made while Trooper Achinger was following it was shown to the trial court and made an exhibit. Upon direct examination by

-3-

the State, Trooper Achinger testified that he had been employed by the Tennessee Highway Patrol for almost ten years. He had been involved in over three-hundred DUI investigations and received additional training in DUI detection and enforcement.

Trooper Achinger testified that he was working the midnight shift when he came in contact with Defendant on December 6, 2012. He was driving northbound on Interstate 65 a short time before 3:00 a.m., and Defendant's vehicle was also traveling northbound less than one-fourth mile in front of Trooper Achinger. Both vehicles were traveling in the far right lane of traffic. Trooper Achinger observed Defendant's vehicle drift to the right toward the shoulder of the road as it entered a "big swooping curve" to the left. Defendant's vehicle "crossed the fog line by less than six inches, probably." Defendant corrected the path of her vehicle and returned it entirely within its lane of travel, but drifted back to the right two more times. The first of these two additional "drifts" resulted in Defendant's vehicle going "almost . . . all the way over the fog line again." On the second additional "drift," Defendant's vehicle "went back over and just barely touched the fog line again." Trooper Achinger testified that the distance traveled by Defendant during the time period just described was between 0.4 and 0.5 of a mile. After this, Defendant's vehicle "drove fine" with no further moving violations before Trooper Achinger initiated the stop after Defendant exited the interstate a little more than two miles past where she had crossed the fog line.

Trooper Achinger acknowledged that although Defendant touched the fog line three times, she only crossed over the fog line one time. Defendant's vehicle never changed lanes prior to exiting Interstate 65, and the vehicle's left tires never crossed the "dotted" white lines to its left. According to an answer provided to a specific question asked by the State during direct examination, Trooper Achinger could not recall Defendant's vehicle ever "weave" within its own lane. Although Trooper Achinger's camera in his vehicle was turned on when Defendant's vehicle crossed the fog line in the left curve, that was not caught on the recording because the camera was focused straight ahead and Trooper Achinger's vehicle had not proceeded into the curve enough. Trooper Achinger testified that he stopped Defendant's vehicle because she was in violation of T.C.A. § 55-8-123(1).

On cross-examination, Trooper Achinger acknowledged his opinion that Defendant did not commit a traffic violation by merely touching the fog line. Trooper Achinger admitted that Defendant's driving did not pose a threat to the safety of any other vehicles while he observed her, and her driving was "not necessarily erratic." Trooper Achinger also acknowledged that Defendant provided proper signals to exit Interstate 65 and to turn onto Old Hickory Boulevard just before she was stopped. He also noted that Defendant was driving at the posted speed limit of 70 miles per hour.

In closing arguments, Defendant asserted that there were not sufficient facts to justify a warrantless seizure of Defendant based upon various cases cited in her motion to suppress. In conclusion, Defendant's counsel aptly noted, "And frankly, [based on the proof], there's a lot of people that came to court today that probably could have been pulled over because of that going outside the lane on a sharp curve."

The State implicitly waived its argument that reasonable suspicion, based upon specific and articulable facts, existed that Defendant was committing the offense of DUI. However, the State summarized its argument in support of denial of the motion to suppress as follows:

> In the state's mind it's more of a probable cause and objective standard, whether or not Trooper Achinger had probable cause that this defendant was committing a violation of [T.C.A. § ] 55-8-123[(1)] . . . . But like I said earlier, I believe on behalf of the state that this is a probable cause case. The defendant was violating [T.C.A. §] 55-8-123[(1)].

Upon denying the motion to suppress, the trial court made the following pertinent findings of fact and conclusions of law:

THE COURT: Thank you. Well, let me thank both lawyers for a good presentation. The facts are fairly straightforward that on December the 6th, 2012 at 2:57 in the morning, Trooper Achinger was traveling north on I-65. He had just passed mile marker seventy-one. At that point, and I think this is important, [Defendant], to the Court's decision, at that point, we've got a four lane highway. The four lane interstate is designed to accommodate traffic that's moving at seventy miles an hour. He then notices [Defendant's] vehicle that's ahead of him, and he's about a quarter of a mile or so behind her vehicle. They enter this curve that's depicted in the video, and it's clear to the Court that the camera is completely off target. I mean the camera pans out to the right. The vehicles are moving to the left. So the case really, in the Court's mind, turns on the credibility of Trooper Achinger. What he testified to was that while it's not capable of being seen by the camera, from his vantage point as the driver of his vehicle, he was able to see that as

-5-

[Defendant] rounded that curve to the left, her vehicle drifted to the right to the point where her tires were across the fog line on the right. He then continued to follow her vehicle, and as the video was played for the Court, again, it is very obvious to the Court that around 2:53:56 [Defendant's] vehicle was in fact traveling dead on the line. She then corrected back to the left, and then her vehicle drifted back to the right again and her tires touched the white line. Counsel for [Defendant] is arguing strenuously that the Court needs to take into consideration the fact that this was a sharp curve to the left and then the early curve to the right, and that [Defendant] may not have negotiated the curve to the left very well, but then she negotiated two curves thereafter. If this were a two lane road under the circumstances, the Court would be much more inclined to agree with [Defendant]. But we're not talking about a two lane road. We're talking about a four lane interstate that's designed, as I mentioned, to accommodate vehicles that are going seventy miles an hour. Drivers are expected to be able to maintain their lane of travel at seventy mile an hour speeds on a four lane interstate. So the curves in that road are not so radical that it's difficult for a driver to maintain the lane of travel. Based upon the credibility the Court finds with Trooper Achinger, the Court believes that there is, in this case, probable cause to believe and to conclude that [Defendant] failed to maintain her lane of travel, and therefore Trooper Achinger had a reasonable basis for stopping her vehicle; and he did make the stop. Now, the fact that [Defendant] drove for roughly two miles after Trooper Achinger observed her driving behavior, in the Court's mind doesn't change the fact that she had failed to maintain her travel - or lane of travel prior to that. He made the stop, and thereafter I don't know what happened. It's not in evidence. But the Court finds that there was probable cause based upon his observation of a misdemeanor, in this case a violation of 55-8-123. Thank you all.

-6-

**Analysis**

Our supreme court has stated,

> The Fourth Amendment to the United States Constitution proscribes "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause . . . particularly describing . . . the persons . . . to be seized." Likewise, Article I, Section 7 of the Tennessee Constitution states that "the people shall be secure in their persons . . . from unreasonable searches and seizures." Because traffic stops constitute seizures entitling a vehicle's occupants to the full protections of the United States and Tennessee Constitutions, *Whren v. United States*, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn. 1993), the authorities must act reasonably when initiating a traffic stop.

> The United States Supreme Court has interpreted this requirement to mean that the authorities must have probable cause or an "articulable and reasonable suspicion" to believe that a traffic violation has occurred when they initiate a traffic stop. *Whren v. United States*, 517 U.S. at 810, 116 S.Ct. 1769; *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); accord *State v. Vineyard*, 958 S.W.2d 730, 736 (Tenn. 1997).

*State v. Brotherton*, 323 S.W.3d 866, 870 (Tenn. 2010).

There are three levels of police-citizen interactions: (1) a full-scale arrest, which must be supported by probable cause in order to be valid; (2) a brief investigatory detention, which must be supported by a reasonable suspicion, based upon specific and articulable facts, of criminal wrong-doing; and (3) a brief "encounter" which requires no objective justification. *State v. Day*, 263 S.W.3d 891, 901 (Tenn. 2008).

Furthermore, it is well settled that

> "Probable cause"—the higher standard necessary to make a full-scale arrest—means more than bare suspicion: "Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has

been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). "This determination depends upon 'whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *Goines v. State*, 572 S.W.2d 644, 647 (Tenn. 1978) (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). "In dealing with probable cause, . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar*, 338 U.S. at 175, 69 S.Ct. 1302.

*Id*. at 902-03.

We will first review the cases relied upon by Defendant in her appellate brief to support her argument that the motion to suppress all evidence obtained after the stop should have been granted. She has divided her argument into two sections: (1) Trooper Achinger did not have probable cause that Defendant had committed the crime of failure to maintain her vehicle within a single lane and (2) Trooper Achinger did not have reasonable suspicion, based upon specific and articulable facts, to believe Defendant had committed or was committing the criminal offense of failure to maintain her vehicle within a single lane. As probable cause is the higher standard, *Day*, 263 S.W.3d at 901-02, if we determine that Trooper Achinger had probable cause to believe Defendant had committed the criminal offense of failure to maintain her vehicle within a single lane, then Trooper Achinger obviously had "reasonable suspicion" to stop Defendant.

In *State v. Ann Elizabeth Martin*, No. E1999-01361-CCA-R3-CD, 2000 WL 1273889 (Tenn. Crim. App. Sept. 8, 2000) (an opinion authored by the author of the opinion in the case *sub judice*) a panel of this Court reversed the defendant's conviction for DUI upon concluding that the officer who stopped the defendant did not have "reasonable suspicion" of commission of a criminal offense to justify the stop. *Id*. 2000 WL 1273889 at *1. The pertinent facts in *Ann Elizabeth Martin* are remarkably similar to the facts in Defendant's case, and were summarized as follows:

In the early morning hours of April 13, 1997, Ann Elizabeth Martin was operating a 1996 GMC van on Lee Highway in Chattanooga. Lee Highway is a divided highway with two lanes of travel in either direction. Officer Robert Starnes of the Hamilton County Sheriff's Department was in the

vicinity at the time, and he testified that he observed Defendant's vehicle at 3:14 AM just south of the junction of Lee Highway and Highway 153. The vehicle was proceeding northbound on Lee Highway, and Starnes watched Defendant's vehicle move from the right-side travel lane to a merge lane on the far right-hand side of the road. After Defendant's vehicle was in the merge lane the tires on the right side of the road crossed over the solid white line onto the paved portion of the road over the traveled portion of the roadway which attracted my attention to the vehicle. The vehicle then came back into the merge lane to get onto 153 and weaved over or crossed over into the slow lane, which would be the outer most lane of Lee Highway on the northbound side. Then at this time I activated my video camera inside my patrol unit and proceeded to record the rest of the information as far as the vehicle's driving.

*Id*.

The panel in *Ann Elizabeth Martin* provided the following analysis in reaching its decision that the stop of the defendant's vehicle was unconstitutional:

We also note that the suspicious activity observed by Officer Starnes does not constitute, in and of itself, a traffic violation. Motorists are liable to change their mind when driving, and thus it is not unusual for a vehicle to enter a turn lane and then return to a travel lane without making a turn. *Nor do we think that a vehicle that briefly crosses the solid white line on the shoulder is committing a traffic violation.* Our laws provide that "[w]henever any roadway has been divided into two (2) or more lanes for traffic. . . . A vehicle shall be driven as nearly as practicable entirely within a single lane," Tenn. Code Ann. § 55-8-123(a) (1997) (emphasis added), *but we do not think that a momentary drift out of a lane constitutes driving a vehicle outside of a single lane. See United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000) (weaving into emergency lane one time for a few feet not a violation of § 55-8-123).

Id. at *6 (emphasis added, except the word "driving")

As applicable to the issue in the case *sub judice*, the precise holding of *Ann Elizabeth Martin* which most supports Defendant's argument is the conclusion that a momentary drift out of a lane of traffic does not constitute "driving" a vehicle outside of a single lane. However, the more recent published opinion of *State v. Watson*, 354 S.W.3d 324 (Tenn. Crim. App. 2011) calls into question this analysis, even though the language in *Watson* can

be considered *dicta*. In *Watson*, the driving by the defendant which this Court held established reasonable suspicion to justify an investigatory stop was established as follows:

> The road was described by the officer as "curvy." After the defendant entered the roadway from the "Runway Bar," Officer Stiles followed the defendant for about one-half of a mile. Officer Stiles testified that during that one-half of a mile, the defendant crossed the fog line, returned to his own lane of traffic, crossed the fog line a second time, then "corrected" by driving across his own lane and crossing the yellow line into the oncoming lane of traffic. There were no other vehicles on the road at the time. At that time, Officer Stiles initiated a traffic stop.

*Watson*, 354 S.W.3d at 327.

The holding of this Court in *Watson* was,

> [T]he officer's testimony, accredited by the trial court, is the basis by which we discern whether there was reasonable suspicion for the stop. In that regard, the testimony presented by Officer Stiles was that he personally saw within one half mile Appellant cross the fog line on two occasions in addition to crossing the yellow center line once. The officer mentioned that Appellant was seen pulling his car onto the highway from a bar. This Court has previously held that an officer's observation of a defendant's crossing over the center line in addition to weaving within his own lane is sufficient reasonable suspicion to support an investigatory stop and cause the denial of a motion to suppress. *Tennessee v. William Robert Wilson*, No. M2009-01146-CCA-R3-CD, 2010 WL 2966747, at *6-8 (Tenn. Crim. App., at Nashville, Jul. 26, 2010), *perm. app. denied* (Tenn. Nov. 17, 2010); *State v. Jody Glen Loy*, No. E2006-02206-CCA-R3-CD, 2008 WL 2229259, at *5 (Tenn. Crim. App., at Knoxville, May 30, 2008). In this case, Appellant crossed the yellow line once and the fog line twice, certainly more than weaving within his own lane of traffic. *Moreover, even if Appellant only crossed the double yellow lines one time, without reasonable cause, that evidence in and of itself would equate to probable cause to initiate a traffic stop under Tennessee Code Annotated sections 55-8-121 or 55-8-123.*

*Id*., at 331 (emphasis added).

Defendant in this appeal also relies upon this Court's holding in *State v. Smith*, 21 S.W.3d 251 (Tenn. Crim. App. 1999). We acknowledge the court in *Watson* distinguished both *Smith* and *Ann Elizabeth Martin* in the following manner:

> Likewise, in *Smith* and *Ann Elizabeth Martin*, this Court determined that there was no reasonable articulable suspicion for stopping the defendants' vehicles where the defendants crossed over the white line one time on a four-lane highway while changing lanes. *Smith*, 21 S.W.3d at 257-58; *Ann Elizabeth Martin*, 2000 WL 1273889, at *6-7.

*Watson*, 354 S.W.3d at 330.

We acknowledge that the *Watson* opinion's reason to distinguish *Ann Elizabeth Martin* (and also *Smith*, discussed below) can arguably support Defendant's assertion that crossing a fog line one time does not even constitute reasonable suspicion to justify an investigatory stop, much less probable cause to bring a charge for violation of a criminal offense. Taken in context with consideration of the opinion as a whole, we conclude that there is not a contradiction in this Court's reasoning in *Watson*. It seems clear to us that the Court distinguished *Smith* and *Ann Elizabeth Martin* on the basis of considering whether reasonable suspicion justified an investigatory stop because of the commission of an offense other than a traffic offense, specifically DUI. That appears to be the only logical explanation to explain the *Watson* court's conclusion that crossing a line one time would constitute probable cause to initiate a traffic stop under T.C.A. § 55-8-123, the relevant criminal offense in the case *sub judice*.

As noted above, Defendant relies on *Smith*, arguing that in that case, the Court of Criminal Appeals "opined that a vehicle driving on a white line after making a lane change does not rise to the level of even reasonable suspicion." However, we note that the Court in *Smith* noted one thing that distinguishes the facts of *Smith* from the facts in Defendant's case. The *Smith* court stated "There was no evidence that [Smith] moved out of his lane." *Smith*, 21 S.W.3d at 258.

In its brief the State failed to divide its argument between "probable cause" and "reasonable" suspicion as Defendant did. Furthermore, the State's citation to legal authorities was primarily focused upon distinguishing the cases relied upon by Defendant. Also, the State basically confined its legal argument to the issue of whether Trooper Achinger had reasonable suspicion to justify an investigatory stop, but the State's argument seems more inclined to assert he had reasonable suspicion to investigate Defendant for *DUI* (The trooper "had received specialized training in DUI detection and enforcement and had been a part of over 300 DUI investigations. . . . within the span of only half a mile, Trooper

Achinger observed the defendant's vehicle swerve on three occasions onto the white fog line. . . . On one of the three occasions, the vehicle's tires drove completely over the fog line - nearly six inches."). We respectfully note, as stated above, the State waived any argument in this certified question of law that reasonable suspicion of DUI justified the stop.

Neither party has cited our supreme court's opinion in *State v. Brotherton*, 323 S.W.3d 866 (Tenn. 2010). In *Brotherton*, the supreme court held that a police officer had reasonable suspicion, based upon specific and articulable facts, to stop the defendant for violation of the Class C misdemeanor offense of violation of T.C.A. § 55-9-402(b). *Id*. at 871. That particular subsection of T.C.A. § 55-9-402 mandates that each motor vehicle must be equipped on the rear of the vehicle with two red tail lamps and two red stoplights, and the red stoplight "shall not project a glaring or dazzling light." T.C.A. § 55-9-402(b)(2). In *Brotherton*, the Highway Patrol trooper stopped the defendant's vehicle after the trooper observed a "bright light" shining from the passenger side's taillight area as the vehicle slowed down approaching a railroad crossing. The trooper concluded that the taillight was obviously broken.

As a result of investigation after the stop, the defendant was charged with DUI. He filed a motion to suppress all evidence because of the alleged illegal stop. Although proof showed that the defendant had covered the cracked taillight with red "tail light tape" in order to comply with the requirements of the law codified in T.C.A. § 55-9-402, the evidence also was that the "weathered tape [ ] had a hole in the center . . . with light shining through." *Id.* at 869. The trial court denied the motion to suppress. The defendant entered a negotiated guilty plea to DUI and properly reserved a certified question of law pertaining to the motion to suppress. On appeal, this Court reversed, on the basis that the trooper "lacked reasonable suspicion to initiate a traffic stop." *Id.*

Our supreme court reversed the decision of the panel of the Court of Criminal Appeals. In doing so, our supreme court made the following holding, which along with the additional quoted approval of an analysis in *United States v. Johnson*, 242 F.3d 707 (6th Cir. 2001), compels us to conclude that the judgment in the case *sub judice* must be affirmed.

> The Court of Criminal Appeals erred by considering only whether the taillight on Mr. Brotherton's automobile was "in good condition and operational" for the purpose of Tenn. Code Ann. § 55-9-402(c). *A showing of reasonable suspicion does not require an actual violation of the law because "Terry accepts the risk that officers may stop innocent people" to investigate further. Illinois v. Wardlow*, 528 U.S. 119 at 126, 120 S.Ct. 673. Thus, the proper inquiry should have been whether Trooper Sullivan had an "articulable and reasonable suspicion" that Mr. Brotherton's taillight

violated Tenn. Code Ann. § 55-9-402, not whether Mr. Brotherton's taillight, in fact, violated Tenn. Code Ann. § 55-9-402. *See United States v. Johnson*, 242 F.3d at 709-10 ("[T]he question is not whether a Tennessee court would have found defendant guilty of the traffic infraction, but whether the officers had probable cause to believe that a violation had occurred.")

*Brotherton*, 323 S.W.3d at 871 (emphasis added).

Our supreme court in *Brotherton* clearly emphasized that in both "probable cause" for arrest (or citation) cases and in "reasonable suspicion for investigatory stop" cases involving Class C misdemeanor traffic offenses, it is not required that what the officer observes must be enough evidence to support beyond a reasonable doubt that a driver has violated the Class C misdemeanor offense. Thus, for "probable cause" or "reasonable suspicion" analysis of a stop based upon a possible violation of T.C.A. § 55-8-123(1), the conclusion in *Ann Elizabeth Martin* that "a momentary drift out of a lane [does not constitute] *driving* a vehicle outside of a single lane" is misplaced. *Id*. at *6. To the extent this holding in *Ann Elizabeth Martin* can be construed to apply to cases where the issue is whether "probable cause" or "reasonable suspicion" exists to justify a vehicle stop, based upon violation of T.C.A. § 55-8-123(1), the unpublished opinion should not be followed.

The appellate record shows that the trooper, both the trial level and appellate level prosecutors, and the trial judge all concluded that when Defendant crossed the fog line one time, Trooper Achinger had probable cause to stop her vehicle to issue a citation for violation of the Class C misdemeanor offense of failure to drive "as nearly as practicable entirely within a single lane" pursuant to T.C.A. § 55-8-123(1). Pursuant to our understanding of the anaylsis by our supreme court in *Brotherton* set forth above, we are compelled to conclude that the modicum of evidence observed by Trooper Achinger, even if clearly not enough to support a conviction for the Class C misdemeanor offense detailed in T.C.A. § 55-8-123(1), was sufficient to establish both "probable cause" and "reasonable suspicion" to justify a stop of Defendant for violation of T.C.A. § 55-8-123(1). We understand that our holding in this case will likely mean that all drivers (including law enforcement officers, prosecutors, and judges) who briefly cross a fog line on the highways in Tennessee can be pulled over on the basis that the otherwise "innocent" driver has established probable cause that she or he has committed a Class C misdemeanor criminal offense. However, case law has clearly defined "probable cause" and "reasonable suspicion." The General Assembly long ago chose to criminalize a driver's failure to drive within a single lane of traffic "as nearly as practicable." In *Brotherton*, our supreme court has approved a stop solely for a *traffic violation* based on "probable cause" or "reasonable suspicion," even when it is clear that a Tennessee court would not have found the driver guilty of the traffic violation. *Brotherton*, 323 S.W.3d at

871 (citing *United States v. Johnson*, 242 F.3d 707, 709-10 (6th Cir. 2001)); *See also State v. Andrew Quinn*, No. M2013-01683-CCA-R3-CD, 2014 WL 2000666 (Tenn. Crim. App. May 14, 2014)(Defendant maintained that he did not violate the law while drifting over the fog line on the exit ramp because he contended that it was a single lane of traffic. However, in accordance with *Terry*, a showing of reasonable suspicion does not require an actual violation of the law)(citing *Illinois v. Wardlow*, 528 U.S. 119, 126, 120 S.Ct. 673, 145 L.Ed.2d 911 (1996) and *State v. Brotherton*, 323 S.W.3d 866, 871 (Tenn. 2010)).

The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE